The PABST BREWING COMPANY,
Plaintiff-Appellee,

v.

BREWERY WORKERS LOCAL UNION
NO. 77, AFL–CIO, et al.,
Defendants-Appellants.

No. 75–1934.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1975.

Decided May 3, 1977.

Marvin Gittler, Chicago, Ill., Philip I. Sipser, New York City, for defendants-appellants.

Stuart I. Cohen, Peoria, Ill., Mervin N. Bachman, Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD, Chief Judge, HASTINGS, Senior Circuit Judge,* and WHELAN, District Judge.**

FAIRCHILD, Chief Judge.

The defendants, brewery workers for the plaintiff-company, are appealing from a September 23, 1975 order of the district court holding them in civil contempt, and fining each individual $100.00. The court found that the defendants had violated its order of February 25, 1975 which " . . . enjoined and restrained [the defendants] . . . from engaging in . . . a strike, work stoppage, slowdown or picket-

---

* Senior Circuit Judge John S. Hastings heard oral argument and participated in the conference of the court, but died before this opinion was submitted to him for approval.

** District Judge Francis C. Whelan of the United States District Court for the Central District of California is sitting by designation.

ing against plaintiff at its Peoria Heights plant with respect to the disputes between plaintiff and defendant[s] regarding the: (1) discharge of Dan Markham, an employee covered by said Collective Bargaining Agreement between plaintiff and defendant[s]; and (2) utilization of foremen, rather than bargaining unit employees, to perform the work of spot checking bottles of beer for abnormal conditions; and (3) any other grievance under the Agreement, the plaintiff being required to carry out the grievance procedure with respect to any such dispute or grievance  .  .  ..” In this appeal the defendants contend that they did not violate the court's order because (1) the court lacked jurisdiction under the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., to issue such a broad injunction (particularly (3), just quoted); (2) the injunction was binding only as long as the then existing collective bargaining agreement was in effect; and (3) the defendants were denied their right to a jury trial in the contempt proceedings.

I

Pabst is engaged in brewing beer at a plant located at Peoria Heights, Illinois. The defendants are workers at the plant; during the incidents complained of in February, 1975, they were members of Brewery Workers Local Union No. 77, AFL–CIO, bargaining agent for the defendants under a collective bargaining agreement which became effective July 1, 1973 and terminated June 30, 1975. This Agreement covered a broad range of employment conditions and contained a grievance procedure which included no-strike and binding arbitration provisions.

Early in the morning of February 20, 1975 the defendants commenced a strike against Pabst at the Peoria Heights plant. The issues that spawned the strike concerned the discharge of employee Dan Markham, and the utilization of Pabst's foremen, rather than bargaining unit employees, to spot check beer bottles for abnormalities. Grievances relating to these disputes were filed the same day.

In the late afternoon, a hearing was held before the district court on plaintiff's motion for temporary restraining order. In granting the motion the court found that the disputed matters were arbitrable under the collective bargaining agreement and that the plaintiff was prepared to proceed with arbitration at the time of the strike. The court also agreed with the plaintiff's claim of continuing irreparable harm due to the defendants' failure to honor their no-strike obligation. In addition to restraining the defendants from striking over the two disputed matters, the court ordered them not to strike or picket regarding “[a]ny other grievance under the Agreement.” By a consent order dated February·25, the temporary restraining order was converted into a preliminary injunction.

Nearly seven months later, on September 21, the defendants again picketed the Peoria Heights plant. The dispute which spurred this action concerned the suspension of Leonard A. Asbell. A grievance had been filed on behalf of Asbell on September 17, but Pabst had refused to process it. Pabst explained its refusal on the grounds that the grievance was presented by a representative of Local Union No. 770, an affiliate of the Teamsters Union, which was not the union Pabst was required by the collective bargaining agreement to recognize as the agent of the brewery workers. The company then filed a motion with the district court asking that the defendants be held in contempt for violating the February 25 preliminary injunction. After a hearing, the court found that the September 21 and 22 picketing and strike by the defendants violated paragraph (3) of the February 25 injunction. It held the defendants in contempt and fined each of them $100.

Since the Agreement which existed at the time the preliminary injunction was issued had been terminated June 30, there may be some question whether the preliminary injunction applied to the Agreement in effect in September, although it apparently contained similar provisions. Defendants sought to raise this question on appeal, but failed to do so at trial. They will be free to raise it on remand.

## II

■ As a threshold issue we must determine whether this contempt adjudication is an appealable order within the meaning of 28 U.S.C. § 1291. A civil contempt order is ordinarily not appealable as a final order, *Fox v. Capital Co.*, 299 U.S. 105, 107, 57 S.Ct. 57, 81 L.Ed. 67 (1936); appeal is proper, however, from a finding of criminal contempt. *Union Tool Co. v. Wilson*, 259 U.S. 107, 111, 42 S.Ct. 427, 66 L.Ed. 848 (1922). Therefore the appealability of the contempt order in this case depends on whether it can be characterized as criminal or civil.

■ The feature that distinguishes criminal from civil contempt is that the purpose of the former is primarily to punish for actions already taken while the latter intends to coerce for prospective compliance. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). Both imprisonment and a fine may be imposed to achieve these results. The test to determine the nature of the contempt is to ask " . . . what does the court primarily seek to accomplish by imposing sentence?" *Id.*

■ In this case we have no doubt that the plaintiff intended the contempt proceeding to be civil in nature. On September 22 Pabst filed a motion asking the court to find the defendants in civil contempt. On the same day Pabst sent a notice to the defendants entitled "Notice of Civil Contempt Hearing." At the outset of the hearing on Pabst's motion the court also addressed the matter as one of "civil contempt." However, what the parties labeled the proceedings or how the court initially regarded defendants' conduct are not determinative of the character of the contempt sentence. *Shillitani, supra*, at 369, 86 S.Ct. 1531. Rather, we must discover the purpose of the contempt proceeding, whether it was to punish or to coerce compliance.

The contempt hearing of September 23 focused on the defendants' conduct on September 21 and 22. Pabst contended and the court subsequently found that the picketing by the defendants violated the preliminary injunction. From reading the transcript of these proceedings we conclude that Pabst had wanted the court to halt the picketing by means of its power to enforce its prior order. This coercive purpose appears to be in keeping with the character of civil contempt. The cessation of the picketing and resulting work stoppages seems to have been accomplished by the initiation of the contempt proceeding. In the course of the hearing the court indicated that its task during the proceeding was to determine " . . . what, if any, punishment ought to be imposed on people who acted in contempt of its order." Even by this time the court realized that the defendants were no longer picketing and had no intention of resuming this activity.

Still later in the hearing the court continued to refer to punishment as the primary purpose of the impending contempt sentences. Upon questioning Mr. Munday, one of the defendants, the court learned that in accordance with its direction he had been located the previous evening and had spent that night in jail. Referring to his incarceration, the court commented that " . . . by spending the night in jail you have already paid for your error to a degree." In addressing another defendant, Mr. Segal, the court again expressed the view that its obligation in this hearing was " . . . to determine appropriate punishment for violations of its orders." Finally, in a colloquy with Mr. Schnipper, counsel for the defendants, the court explained that the purpose of a contempt sentence in this case was not to serve Pabst's interests, but rather to ensure compliance with an order of the court. Although punishment for a completed violation is a deterrent to further violations, we find implicit in this statement and particularly in the court's continuous references to punishment the conclusion that the contempt sentence was not for remedial purposes but rather for punitive ones.

We are further persuaded of the criminal character of the finding of contempt by reviewing the court's conclusions before it meted out the fines. The judge decided

that the contemptuous conduct had ended, but that some punishment was still necessary:

"I am satisfied thoroughly that they [defendants] do understand that [they were acting in contempt of the court's order] now. I am satisfied with their representations on the record that it is their purpose not to violate the order in the future and that we are not involved . . . [in a] . . . continuing contempt by anybody that I am aware of.

That leaves us with the question of what is appropriate punishment for contempt that took place yesterday and the day before . . . ."

The court concluded that the "appropriate punishment" was a fine of $100 for each defendant, and that each would remain in the custody of the United States Marshal until arrangements were made to pay the fine.

■ We have concluded that both the court's concern for meting out punishment for already terminated conduct and the assessment of a fine payable to the United States indicate that the character of the contempt sentence was criminal. At the time of the hearing the defendants were no longer acting in contempt of the injunction, and during the proceedings they successfully convinced the court that they would not do so in the future. The contempt sentence could have no coercive purpose beyond a general deterrent effect since the parties and the court had acknowledged that the defendants were no longer acting or intended to act in the future in violation of the court's order. Rather, the court was punishing the defendants for wilfully flaunting the authority of the court. This punitive

purpose is the essence of the criminal contempt sentence. *See, e. g., Brotherhood of Locomotive Fire & Eng. v. U. S.,* 411 F.2d 312 (5th Cir. 1969). *See also,* 9 Moore's Federal Practice ¶ 110.13[4], at 162.

■ Having determined that the contempt sentence was criminal in character, and therefore appealable, we note that the scope of review of this order is quite narrow. The merits of the underlying order, in this case the preliminary injunction, cannot be challenged in the appeal from the contempt sentence for violations of that order. *Howat v. Kansas,* 258 U.S. 181, 189, 42 S.Ct. 277, 66 L.Ed. 550 (1922). The trial court retains the power to punish contemnors for violations of its order, even if its jurisdiction to issue such order is challenged, *United ed States v. Mine Workers,* 330 U.S. 258, 293–95, 67 S.Ct. 677, 91 L.Ed. 884 (1947), or it is acting under the authority of an act later found to be unconstitutional, *Walker v. City of Birmingham,* 388 U.S. 307, 315–17, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967).[1] Violations of the underlying order are punishable as criminal contempt even though the order is set aside on appeal. *Worden v. Searls,* 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887). The scope of review of the contempt order in this case is limited to errors committed in the contempt proceeding.

■ Rule 42 of the Federal Rules of Criminal Procedure, paragraph b, requires that criminal contempt " . . . shall be prosecuted on notice." This notice shall inform the accused of the time and place of the hearing, and of the facts which allegedly constitute the criminal contempt. Fed. Rules Crim.P., Rule 42(b), 18 U.S.C. The hearing should be held at such time as

---

1. *In Re Green,* 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962), permitted a petitioner, who was held in contempt without a hearing, to challenge, on appeal from that contempt sentence, the jurisdiction of the underlying order where the subject matter was preempted by the "exclusive competence" of the federal agency. Four justices dissented in *Walker v. City of Birmingham,* 388 U.S. 307, 324–49, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), relying in part on *Green,* urging that a contemnor be permitted to challenge an underlying order,

which was entered *ex parte* and based on an allegedly unconstitutional ordinance. Despite the minority view, *Howat* and *Mine Workers* continue to limit the scope of review on appeal from an order imposing a penalty for criminal contempt.

If this court were able to reach the merits of the underlying order it would have serious doubts about the propriety of the breadth of paragraph (3) of the injunction in the light of *Boys Markets v. Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

allows the defendant a reasonable time to prepare his defense. Pabst filed a notice of a hearing of civil contempt with the court and the defendants were served with that notice. In addition, after the defendants failed to appear at the initial time set for the hearing, bench warrants were issued; all but one were returned unexecuted. This notice was appropriate for the civil proceedings which were anticipated by Pabst. However, once the court determined that the hearing was going to focus on the penalty for completed past conduct, the proceedings were transformed in character from civil to criminal. Rule 42(b) requires that the defendants be informed that they are charged with criminal conduct. The mislabeling of the proceedings is not the determinative factor as long as the defendants were aware that they were being tried for criminal contempt. *Mine Workers, supra*, 330 U.S. at 297–98, 67 S.Ct. 677. The critical consideration is rather that sometime in the proceedings the defendants be informed of the criminal charges and that they be allowed a reasonable time to prepare a defense.

Nowhere, except the court's remarks about "punishment," is there an indication in the record that the defendants were apprised of the criminal character of the proceeding. Awareness of such character is the only adequate substitute for specific notice thereof, *Mine Workers, supra*, at 297–98, 67 S.Ct. 677. Whatever awareness defendants may have come to during the hearing, there was no real opportunity to consider and present whatever defense they may have had. An example is the claim, already referred to, that the injunction applied only to the contract which expired before the conduct at issue. Accordingly, we find that the proceeding did not sufficiently comply with Rule 42(b) and conclude that the sentences must be vacated and the cause remanded for a new trial.

Finally, for the purpose of guiding any further proceeding herein, we consider the appellants' argument that they were entitled to a jury trial in the contempt case. In support of this contention they cite 18 U.S.C. § 3692 which provides that in

" . . . all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury . . . ." They urge that since they did not explicitly waive this right they should have been offered the opportunity to have been tried by jury.

In a recent decision, *Muniz v. Hoffman*, 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975), the Supreme Court examined the scope of the right to a jury trial embodied in § 3692 in contempt proceedings enforcing injunctions issued under the authority of the Labor-Management Relations Act. The Court specifically found that § 3692 did not apply to contempt proceedings brought to enforce injunctions issued at the request of the Labor Board under § 10(*l*) of the Act, 29 U.S.C. § 160(*l*), 422 U.S. at 474, 95 S.Ct. 2178. After a thorough examination of the legislative history, the Court first concluded that § 3692 substantially mirrored its predecessor, § 11 of the Norris-LaGuardia Act, *Id.* at 469, 95 S.Ct. 2178. Section 11 provided for a right to a jury trial in all cases "arising" under the Norris-LaGuardia Act " . . . in which a person shall be charged with contempt . . . ." *Id.* at n.4. The Court then found that the Taft-Hartley Act, the core of the Labor-Management Relations Act, " . . . authorized various kinds of injunctions in labor dispute cases and expressly or impliedly exempted those injunctions from the jurisdictional and procedural limitations of Norris-LaGuardia to the extent necessary to effectuate the provisions of . . . [that Act]. . . . " *Id.* at 461, 95 S.Ct. at 2183. It reasoned, therefore, that injunctions granted under the authority of the Labor-Management Relations Act were not issued in cases "arising under" Norris-LaGuardia, but despite it. *Id.* at 463, 95 S.Ct. 2178. The Court thus concluded that § 11 was inapplicable to contempt proceedings to enforce injunctions granted under the Labor-Management Relations Act, and consequently so was § 3692, the successor to § 11.

**152**

The case before us, unlike *Muniz* which covered injunctions requested by the Board under § 10(*1*), involves an injunction sought by an employer under § 301(a) of the LMRA, 29 U.S.C. § 185. However, the analysis developed in *Muniz* appears to encompass all injunctions issued under the LMRA, regardless of which section. At the heart of the Court's reasoning was the proposition that LMRA injunctions were never intended to be subject to the procedural and jurisdictional limitations of Norris-LaGuardia. 422 U.S. at 463, 95 S.Ct. 2178. Section 301(a) provided an "implied" exemption from the prohibitions of Norris-LaGuardia. *Id.* at 461, 95 S.Ct. 2178. In *Boys Markets v. Clerks Union*, 398 U.S. 235, 353, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Court had earlier held that in accommodating Norris-LaGuardia with § 301(a) of the LMRA the former must give ground to the equitable remedies available under the latter to promote the policy of implementing the arbitration process. The exemption declared in *Boys Markets* provides further evidence that injunctions granted under § 301(a) are not issued "under" Norris-LaGuardia, but despite it. Based on the broad language of *Muniz* and the earlier holding in *Boys Markets*, we conclude that § 11 and its successor § 3692 do not apply to contempt proceedings to enforce injunctions issued under § 301(a). On remand, therefore, and the offense having been treated as a petty offense, the appellants will not have a right to a jury trial.

For the reasons stated herein we vacated the order of the district court and remand this case for a new trial.