**In re Leonard C. JAQUES, Attorney, Attorney-Appellant.**

**Ali S. AHMED, Plaintiff,**

**v.**

**REISS STEAMSHIP COMPANY, Defendant.**

**No. 84–3221.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 25, 1985.

Decided May 6, 1985.

Rehearing and Rehearing En Banc Denied June 24, 1985.

Wellford, Circuit Judge, filed concurring opinion.

Hillman, District Judge, filed dissenting opinion.

Leonard C. Jaques, pro se, and Mark R. Bendure (argued), Gromek, Bendure & Thomas, Detroit, Mich., for attorney-appellant.

Robert N. Dunn, Detroit, Mich., for defendant.

Before MERRITT and WELLFORD, Circuit Judges, and HILLMAN, District Judge.*

MERRITT, Circuit Judge.

In this action, Leonard Jaques, an attorney, appeals from an order by District Judge Ann Aldrich holding him in contempt for his failure to appear before Judge Aldrich on the first day of trial in an admiralty case in which he represented the plaintiff, Ali Ahmed. 580 F.Supp. 737 (1984). The District Judge found that Jaques' failure to appear was unjustified. She ordered Jaques to pay the government's cost of compensating the 22 person venire panel called to sit on the trial date and to reimburse opposing counsel's hotel and attorneys fees, thereby assessing a compensatory fine totalling approximately $1800. We conclude that the District Court's action was an appropriate and moderate response to Jaques' provocative conduct. For the reasons stated below, we affirm.

## I.

Leonard Jaques represented the plaintiff, Ali Ahmed, in an admiralty action before District Judge Aldrich in Cleveland, Ohio. As a courtesy to Jaques and his client, the District Court on August 1, 1983, scheduled a firm trial date of October 24, 1983. On October 19, Jacques called and requested that the trial date be moved back one day because he would be in Baltimore, Maryland, in a trial before Federal District Judge Howard. The District Court granted this request. However, on Monday, October 24, the District Court received a call from Judge Howard's office informing the court that the trial in Baltimore would not end until Tuesday, October 25, and so Judge Aldrich again rescheduled trial to begin on Wednesday morning, October 26. Her clerk called Judge Howard's office and left a message for Jaques to appear for trial in Cleveland on Wednesday morning.

As six o'clock on Tuesday evening, the evening before the trial was set to begin, Jaques' associate Gary Baun called the District Court and, according to Judge Aldrich, informed the court that Jaques could not be in Cleveland on Wednesday because he was required to be in Baltimore when jury instructions were delivered in Judge Howard's courtroom on that same day. In fact, Jaques had been excused on Tuesday afternoon by the court in Baltimore so that he could appear for trial in Cleveland on Wednesday morning. At Judge Aldrich's request, another associate of Jaques', Robert Swickle, appeared in his place on Wednesday.

Settlement negotiations were undertaken on Wednesday morning, but these became stalemated. Swickle explained that he had been "pressed in for this" and that no further progress could be made until Jaques spoke with Ahmed, since Ahmed was really Jaques' client and not Swickle's. However, when Judge Aldrich called Baltimore in an attempt to reach Jaques, Judge Howard told her that he had excused Jaques at four o'clock Tuesday afternoon so that Jaques could appear in her courtroom in Cleveland on Wednesday. Returning to the settlement negotiations, Judge Aldrich admonished Swickle for the wasted expense in calling in the venire panel and having opposing counsel appear, and for Jaques' apparent misrepresentation to two

---

* The Honorable Douglas W. Hillman, Judge of the United States District Court for the Western District of Michigan, sitting by designation.

federal judges that he was in the other's courtroom when in fact he was in neither. She told Swickle that after the trial, she would expect Swickle, Baun and Jaques to explain this sequence of events or else face sanctions.

On November 2, 1983, the District Court ordered Baun, Swickle and Jaques to appear and show cause why they should not be found in contempt under 18 U.S.C. § 401 for Jaques' failure to appear on October 26 and for misrepresenting Jaques' whereabouts. A hearing on the show cause order was held on December 22, 1983, at which Jaques represented himself and his associates. Throughout most of the hearing, Jaques refused to reply to the court's legitimate question as to the reason for his failure to appear, and instead challenged the authority of the court to conduct the proceeding and the specificity of the show cause order. When he finally did reply, Jaques' justification for his failure to appear was that he "had the screaming itches in the crotch ... I wasn't here because I would have been scratching my testicles constantly if I had been here."

In a lengthy memorandum opinion, the District Court found Jaques in contempt of court under 18 U.S.C. § 401.[1] The court found that Jaques' failure to appear, especially in light of the misrepresentations made regarding his whereabouts, was punishable as misbehavior so near the presence of the court "as to obstruct the administration of justice" under section 401(1). The court also found that Jaques' conduct was punishable under section 401(3) because he had failed to comply with the court's order compelling his appearance on October 26. With the express purpose of compensating the "victims of Jaques' prevarications," the court ordered Jaques to pay a "remedial" fine equal to the cost of compensating the twenty two member venire panel plus the opposing counsel's hotel and attorney's

fees for October 26, an amount totalling $1804.87.

## II.

### A.

Jaques contends that the District Court's order imposing sanctions must be overturned because the show cause order and the court's opinion failed to state clearly whether the contempt proceedings were civil or criminal, and that these proceedings were in fact criminal and failed to afford him the procedural due process he was constitutionally entitled to as a criminal defendant.

Both civil and criminal contempt proceedings may be brought under 18 U.S.C. § 401, *United States ex rel. Shell Oil Co. v. Barco Co.*, 430 F.2d 998, 1000 (8th Cir.1970), and because of the frequency with which the two forms of contempt are confused, a lower court's characterization of its proceedings is but one factor to consider in determining their true nature. *United States v. Powers*, 629 F.2d 619, 626 (9th Cir.1980), citing *Lewis v. S.S. Baune*, 534 F.2d 1115, 1119 (5th Cir.1976). We must look instead to the "totality of the circumstances" to determine both the proper form of proceeding and that actually used. *United States v. North*, 621 F.2d 1255 (3rd Cir.) (en banc), *cert. denied* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980).

The District Court imposed a fine which was explicitly fashioned merely to compensate the government and the opposing counsel for the harm caused by Jaques' failure to appear, and ordered the fine paid over to the victims of his misconduct. Generally, civil contempt may be either intended to coerce future compliance with a court's order, *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16

---

1. In pertinent part, 18 U.S.C. § 401 provides that:

   A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

   (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; ...

   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

L.Ed.2d 622 (1966), or to compensate for the injuries resulting from the noncompliance. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *TWM Manufacturing Co. v. Dura,* 722 F.2d 1261, 1273 (6th Cir. 1983). Here, the District Court not only stated that the purpose of Jaques' fine was remedial and compensatory, but fashioned the fine so as to do no more than compensate the injured parties for their actual damages. These facts show that the contempt proceedings were plainly civil. *McCrone v. United States,* 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108 (1939); *Perfect Fit Industries v. Acme Quilting Co.,* 673 F.2d 53, 57 (2d Cir.), *cert. denied* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982). Jaques was therefore not entitled to the procedural protections afforded criminal defendants.

■ Moreover, no prejudice to Jaques resulted from the District Court's failure to specify whether the proceedings were civil or criminal. The show cause order sent long in advance of the hearing clearly indicated the factual basis of the charge against Jaques. That order was sent on November 2, 1983, well before the December 22 hearing. At the hearing, Jaques had a full and fair opportunity to explain his failure to appear. Instead, he referred to the hearing itself as an "indignity to counsel." He then degraded his profession and insulted the court by stating that he was absent because "I would have been scratching (my) testicles constantly if I had been here." Jaques was afforded procedural safeguards well exceeding the minimum of notice and a reasonable time to prepare a defense held to apply in all contempt proceedings in *United States v. Hawkins,* 501 F.2d 1029, 1031 (9th Cir.), *cert. denied* 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974), and we find no merit in his claim that he was denied due process.

■ The actions taken by the District Court find additional and independent justification in 28 U.S.C. § 1927[2], which authorizes the court to require an attorney personally to pay the "excess costs, expenses and attorneys' fees reasonably incurred" when the attorney "multiplies the proceedings ... unreasonably and vexatiously." The court did precisely what is authorized by this statute, and the fact that the statute was not explicitly relied upon does not rob the court's order of its validity. Indeed, the District Court was personally familiar with the circumstances surrounding Jaques' failure to appear, and expenses and fees could therefore have been assessed without holding a hearing, since the usual method of handling factual issues under section 1927 is by affidavit. *North American Foreign Trading Corp. v. Zale Corp.,* 83 F.R.D. 293, 298 (S.D.N.Y.1979). We affirm the actions of the District Court under the authority of this statute.

**B.**

■ Jaques also contends that there is insufficient evidence supporting the District Court's findings that he violated an order to appear for trial and misrepresented his whereabouts and the reason for his failure to appear. In considering this contention, we note at the outset that since the contempt proceeding was civil and remedial in nature, Jaques' intent in disobeying the order to appear is irrelevant to the validity of the contempt finding, *McComb v. Jacksonville Paper Co.,* 336 U.S. at 191, 69 S.Ct. at 499, and the clear and convincing evidentiary standard applied to the proceeding. *NLRB v. Decaturville Sportswear Co., Inc.,* 518 F.2d 788, 790 (6th Cir.), *cert. denied* 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed.2d 141 (1975). *See also NLRB v. Blevins Popcorn Co.,* 659 F.2d 1173, 1183–84 (D.C.Cir.1981). Thus, the District Court must be upheld unless the finding that

**2.** 28 U.S.C. § 1927 provides that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Jaques violated an order to appear is clearly erroneous.

The record discloses to the contrary that Jaques was under a formal order to appear on October 25, and the fact that the District Court orally continued trial until October 26 to accommodate Jaques' schedule did not somehow make the order to appear on October 26 insufficiently formal and clear. Moreover, statements by Jaques and his associates belie any contention that he did not feel bound by a formal order to appear. In producing his "medical" excuse at the show cause hearing, Jaques stated that "I was in Baltimore trying a lawsuit and on Tuesday, *before we were to be here,* closing arguments finished up. I had nothing else and I had every intention to come here." (Emphasis supplied). In proceedings before the court on October 26, Swickle explained that settlement negotiations would be furthered if Jaques could speak to the client because "Mr. Jaques was handling the case." Finally, the court was told by Judge Howard on October 26 that "Mr. Jaques had represented to Judge Howard that he had to be in Cleveland this morning." The evidence clearly supports the District Court's finding that Jaques violated an order to appear of which he was well aware.[3]

Accordingly, the judgment of the District Court is affirmed. Double court costs are assessed against appellant. The Clerk is instructed to send a copy of this opinion to the President of the Michigan Bar Association and to the President of the Detroit Bar Association so that those Associations may consider disciplinary action against Jaques for his behavior.

---

WELLFORD, Circuit Judge, concurring.

I fully adopt the recitation of the factual circumstances applicable to this regrettable instance of at best thoughtless and boorish behavior on the part of an attorney in the presence of the district judge and/or in respect of proceedings then pending before her. I concur in Judge Merritt's conclusion that the contempt proceedings in this case, although not clearly delineated, were essentially civil in nature, and that Jaques was not prejudiced by the district court's failure of specification. I further concur in the conclusion that Jaques received a full and fair hearing with reasonable opportunity to explain his previous failure to appear. On this basis I join in the judgment of affirmance.[1]

While I find the rationale logical pertaining to finding additional justification for the court's action in 28 U.S.C. § 1927, I decline to join that part of the opinion. This court previously (and I believe unfortunately) limited the application of that section in *United States v. Ross,* 535 F.2d 346 (6th Cir.1976). Another court has found that conduct akin to studied disregard for orderly processes of justice be the necessary predicate for imposition of costs thereunder. *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163 (7th Cir.1968), *cert. denied,* 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969). While Jaques disregarded the procedures established by Judge Aldrich, I am not sure that his actions "vexatiously" multiplied the proceedings within the meaning of that statute.

I join in the conclusion that clear and convincing evidence, if required in this type of proceeding, was present to support the district court's findings and imposition of civil sanctions.

---

HILLMAN, District Judge, dissenting:

Although appellant's conduct should be an embarrassment to himself, members of

---

**3.** While the order to appear on October 26 was apparently not recorded by the District Court, this lack of formality does not affect the validity of the contempt proceeding, because there is sufficient evidence showing that Jaques knew of the order, and because the proceeding was civil and not criminal. In *In Re Lamarre,* 494 F.2d 753, 758 (6th Cir.1974), this Court held only that for an order to be enforced by criminal contempt proceedings, it must be clear and definite and actually entered upon court records.

**1.** The particular offensive remarks pointed to by Judge Merritt made to Judge Aldrich may themselves have been a basis for the Judge to find that Jaques was persisting in his conduct essentially contemptuous of the Judge and the orderly processes of the court.

his firm and the trial bar, I respectfully dissent. The majority concludes that the contempt judgment below should be affirmed since it was civil in nature. Consequently, according to the court, the rights and protections guaranteed to those charged with criminal contempt are not applicable to appellant. The proceedings below, which were commenced after the case was settled, were pursued by the district judge for one purpose only, and that was to punish appellant for his professional misconduct and to vindicate the authority of the court. This is classic criminal contempt. *Civil and Criminal Contempt in Federal Courts,* 17 F.R.D. 167, 178 (1955).

The nature of contempt proceedings depends primarily upon the purpose for which the proceedings are brought. *In re Stewart,* 571 F.2d 958, 963 (5th Cir.1978). *See also Gompers v. Buck Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). The purpose of civil contempt is remedial: "the penalty serves to enforce compliance with a court order or to compensate an injured party." *In re Stewart,* 571 F.2d at 963. The purpose of criminal contempt is punitive: "the penalty serves to vindicate the authority of the court and does not terminate upon compliance with a court order." *Id.* As stated by the Seventh Circuit in *Pabst Brewing Co. v. Brewery Workers Local Union No. 77,* 555 F.2d 146, 149 (7th Cir.1977):

"The feature that distinguishes criminal from civil contempt is that the purpose of the former is primarily to punish for actions already taken while the latter intends to coerce for prospective compliance.... The test to determine the nature of the contempt is to ask '... what does the court primarily seek to accomplish by imposing sentence?' "

In the instant case, appellant found himself in a predicament not uncommon to the trial bar. He was required to be in two courts 500 miles apart on the same day. His failure to extricate himself from this dilemma in a professional manner resulted in his being found guilty of contempt of court. Specifically, the district judge held that appellant (a) failed to appear in Cleveland for trial as ordered, and (b) told two different federal judges he was appearing before the other, when in fact, he was appearing before neither.

In her Memorandum and Opinion, the district judge states:

"[T]his court finds Jaques' rude and irresponsible failure to appear on October 26, 1983 is clearly punishable as *criminal* contempt under 18 U.S.C. § 401(3) .... Jaques' unabashed prevarication regarding his whereabouts is punishable under § 401(1). Unfortunately, the First Circuit was unquestionably correct when it stated: · 'Merely punishing the delinquent attorney does not solve the problem for the court ˙whose calendar was disrupted.' [*United States v. Lespier,* 558 F.2d 624, 628 (1st Cir.1977)].

Allowing Jaques to escape all sanctions after such misbehavior would, however, encourage chaos, reward reprehensible tactics, and breed contempt for court scheduled proceedings.

There can be no doubt that Jaques deliberately and recklessly disregarded his obligation to the court. Such intentional disrespect is sanctionable by *criminal* contempt."

Memorandum and Opinion, p. 19. (Emphasis added). For these reasons, the district judge found Jaques guilty of contempt under 18 U.S.C. § 401(1) and § 401(3). Jaques was ordered to pay to the Clerk of the Court the costs of compensating the venire panel and to reimburse defendant for its counsel's hotel expenses and attorney fees incurred on October 26, 1983.

Although the district judge stated that this fine was "remedial," this characterization is not dispositive. *United States v. Powers,* 629 F.2d 619, 626 (9th Cir.1980). The contempt proceedings were not brought by an injured party seeking reimbursement for costs and expenses, nor were they intended to coerce prospective compliance. The matter was prosecuted by the district judge after the *Ahmed* case had already been settled. The fine, a portion of which was to be paid directly to the

Clerk of the Court, was imposed as punishment for past misconduct. Its purpose was to vindicate the authority of the court in the face of what it perceived to be willful and reckless disregard for the court's order. Accordingly, I conclude that the contempt proceedings were criminal in nature.

Nevertheless, it is apparent that the district judge was unclear herself whether she was citing appellant for criminal or civil contempt. The initial order to show cause referred to "sanctions," yet at the hearing, no statement was made by the court clarifying whether the contempt was criminal or civil, despite appellant's request to know the specifics of the charge he was facing. The trial court's memorandum and order compounds the confusion. Her opinion retained the civil case caption (indicative of civil contempt), but the court specifically, and for the first time, used the term "criminal contempt" in describing appellant's conduct. Thus, although I am convinced that the proceedings were for criminal contempt, the record is confusing on this point, as evidenced by this panel's inability to agree whether it was civil or criminal.

A lawyer has a right to know from the very beginning whether he is being charged with criminal or civil contempt. The distinction is vital. Criminal contempt is a crime. If in fact the charge was criminal contempt, appellant was entitled to notice and hearing, right to counsel, right to bail, proof beyond a reasonable doubt, presumption of innocence, privilege against self-incrimination, and in some instances, not only a right to a jury trial, but the right to a hearing before another judge.[1] While this circuit apparently has not addressed the question, the Fifth Circuit has repeatedly held that reversal is required when the record does not clearly disclose that the proceedings were civil or criminal. *See, e.g., Skinner v. White,* 505 F.2d 685, 688–89 (5th Cir.1974); *Cliett v. Hammonds,* 305 F.2d 565, 570 (5th Cir.1962). With trial judges currently being urged to use "sanctions"[2] to control discovery abuses and eliminate other delaying tactics, one can expect to see more contempt cases on appeal. The Fifth Circuit rule provides clear and unambiguous guidelines to the district judges and its adoption in this circuit would prevent future procedural confusion of the type evidenced by this case.

In addition, the contempt judgment cannot stand since the trial judge erroneously concluded that the order to show cause shifted to appellant the burden of disproving the charges. "It's not the court's burden to put on the evidence." (Tr. 12/22/83, p. 30). Appellant was convicted because of the court's belief that his explanations were not convincing. In *North American Coal Corp. v. Local Union,* 497 F.2d 459, 466 (6th Cir.1974), this court held the issuance of an order to show cause does not relieve the party alleging the contempt of the burden of proving the charge. No such proof can be found in this record. There was no sworn testimony and no witnesses, only a tumultuous exchange between appellant and the judge. The judge's "findings" were based on *ex parte* accounts related to her by her law clerk and the district court in Baltimore. There can be no question she was incompetent as a witness to render such testimony. *See* Fed.R. Evid. 605 (presiding judge may not testify in that trial as a witness); Fed.R.Evid. 602 (requirement of personal knowledge); Fed. R.Evid. 802 (hearsay).

Likewise, despite appellant's failure to show up for trial in Cleveland, it is undisputed that his associate was present at the commencement of the proceedings. Although a dispute exists over the associate's exact role and authority in appellant's absence, an attorney is not guilty of contempt for non-appearance where an associate appears in his place. *United States v. Delahanty,* 488 F.2d 396, 399–400 (6th Cir.1973).

In any event, even if the proceedings were civil in nature, I cannot agree that

---

**1.** The criminal contempt procedures are set forth in Fed.R.Crim.P. 42.

**2.** Burger, 61st Annual Meeting of the Am.Law Institute, May 15, 1984; Burger, 1984 Year-End Report on the Judiciary.

there is clear and convincing evidence that such sanctions were warranted under either 18 U.S.C. § 401(3) or § 401(1). Section 401(3) authorizes the court to impose sanctions for "disobedience or resistance to its lawful writ, process, order, rule, decree or command." Here, the district judge concluded that sanctions were warranted under this statute because Jaques failed to appear in court on October 26, 1983. This conduct, however, cannot be sanctioned under section 401(3), absent an unequivocal order requiring Jaques to be present. I find no such order in the present case.

The trial judge scheduled trial to begin on October 24, 1983. This order, however, could not be the basis for the contempt charge because it was directed to appellant's associate, not Jaques, and was rescinded by Judge Aldrich at the request of Jaques' office because the trial in Baltimore was expected to continue until October 25, 1983. The only other "order" issued was a telephone message given by Judge Aldrich's clerk to Judge Howard's secretary in Baltimore, stating that Jaques would be "expected" to appear for trial in Cleveland on October 26, 1983.

In *In re LaMarre*, 494 F.2d 753 (6th Cir.1974), this court addressed the question whether such a message constituted an order under 18 U.S.C. § 401(3). In *LaMarre*, an insurance adjustor was repeatedly advised by telephone that the trial judge desired his attendance at settlement discussions. The District Court held him in contempt for refusing to attend, and this court reversed, holding that a request by telephone does not constitute an order under section 401(3):

"[The] cases hold or imply that for an 'order' or 'command' to be enforced by criminal contempt proceedings, it must be clear and definite and 'entered' upon the record or records of the court. These standards strongly suggest that such order be permanently preserved for review. This normally means a written order issued by the court and personally served upon the alleged contemner. Such an order, however, may likewise be enforceable if entered in open court in the presence of the person concerned or with his knowledge clearly proved."
494 F.2d at 758.

Likewise, under similar facts, the Fifth Circuit held in *In re Stewart*, 571 F.2d 958, 966 (5th Cir.1978):

"[A]n oral 'message' such as this, not stated in open court where it could be taken down by a court reporter, addressed to a person not before the court, never entered upon the records of the court, and relayed ... through a person without official status, is not an 'order' or 'command' within the meaning of subsection (3)."

Judges and lawyers work in a contentious environment under great strains and pressures. Our system presumably thrives on combative advocacy. At the same time, the contempt power of the court is designed to protect the integrity of the court. Thus, when this awesome power is exercised by a judge, no doubt should exist concerning the interpretation of the order alleged to have been disobeyed. This is the teaching of *LaMarre*, regardless of whether the nature of the proceedings is civil or criminal. In either case, an unequivocal order is required to put the contemner on notice that severe sanctions may be imposed for non-compliance. Since no such order was issued in this case, sanctions could not be imposed under section 401(3).

Finally, as a matter of law, the alleged falsehood contained in the telephone call from appellant's associate in Baltimore to the judge in Cleveland does not constitute a violation of 18 U.S.C. § 401(1). First, the call was not made by appellant himself, but by his associate. Absent proof that appellant authorized or ratified the allegedly false representation, appellant cannot be held vicariously guilty of contempt. *North American Coal Corp.*, 497 F.2d at 467. Second, the associate's call from Baltimore to the clerk in Cleveland was not "in the court's presence or so near thereto as to obstruct the administration of justice." The Supreme Court has specifically held that this language requires the contemptu-

ous conduct to occur in physical proximity to the court. *Nye v. United States*, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). In *Nye*, the defendant, an attorney who represented the defendant in a wrongful death suit, was charged with contempt for having induced the father of the deceased to dismiss the wrongful death suit through the use of intoxicants. Construing the statutory language "so near thereto" as used in the contempt statute, the Supreme Court stated:

> "The question is whether the words 'so near thereto' have a geographical or a causal connotation. Read in their context and in the light of their ordinary meaning, we conclude that they are to be construed as geographical terms."

*Nye*, 313 U.S. at 48, 61 S.Ct. at 815. *See also Schmidt v. United States*, 124 F.2d 177 (6th Cir.1941); *Farese v. United States*, 209 F.2d 312 (1st Cir.1954). Here, the conduct in question occurred in Baltimore. Under the cited case law, this does not constitute a violation of 18 U.S.C. § 401(1), as the purported misbehavior was not in the "presence" or "so near thereto" of the Cleveland judge as the statute requires.

In conclusion, while appellant's conduct and language at the contempt hearing itself may be a basis for imposing sanctions, the contempt citation presently before this court was not warranted under § 401(1) or § 401(3). Likewise, I concur with Judge Wellford that the district court's judgment cannot be supported by *ex post facto* reliance upon 28 U.S.C. § 1927. *United States v. Ross*, 535 F.2d 346 (6th Cir.1976).

Accordingly, I respectfully dissent from the decision to affirm the judgment of contempt entered by the District Court. I do, however, concur in that part of the majority opinion that refers appellant's conduct at the show cause hearing to the appropriate Bar Association for review and possible disciplinary action.[3]

---

**3.** Since appellant is licensed by the State of Michigan, the appropriate body to look into this matter is the Michigan Attorney Grievance Com-

mission, 600 Marquette Building, 243 West Congress Street, Detroit, MI 48226.