**Robert McGUFFIN, Plaintiff,**

v.

**SPRINGFIELD HOUSING AUTHORITY, its Board of Commissioners, a Municipal Corporation; Bruce Stratton, Phineas Hurst, in their capacities as members of the Board of Commissioners of the Springfield Housing Authority, Defendants.**

No. 79–3116.

United States District Court,
C.D. Illinois,
Springfield Division.

July 1, 1987.

---

Robert McGuffin, pro se.

Alex de Saint Phalle, Springfield, Ill., for defendants.

## OPINION ORDER

MILLS, District Judge:

Violation of a Court order.

Civil contempt?

Just so.

■ Court orders are to be complied with both in *letter* and *spirit*—lack of scienter is beside the mark.

Robert McGuffin, former Executive Director of the Springfield Housing Authority, instituted this lawsuit in May 1979 under 42 U.S.C. § 1983 against the municipal body and its governing board to contest the termination of his employment as violative of procedural due process.

The litigants subsequently settled the controversy in October 1979. The late Judge J. Waldo Ackerman entered an order under which McGuffin agreed to resign in exchange for, among other things, Defendants' promise to furnish a form letter to any prospective employer of Plaintiff making inquiry:

> The Springfield Housing Authority will answer all employment inquiries made by prospective employers of Robert McGuffin by a letter ... attached hereto....

On April 19, 1985, Plaintiff filed a petition for a rule to show cause why Defendants should not be adjudged in civil contempt of the Court's lawful decree. Following a review of the record, this tribunal on December 3, 1986, ordered the Defendants to appear and answer McGuffin's charges. Argument ensued June 8, 1987.

McGuffin was one of the final candidates for the position of Executive Director with the Chapel Hill, North Carolina, Housing Authority in May 1983. According to the uncontroverted affidavits of the personnel director for the town and members of the agency's board of commissioners, the authority inquired by telephone about the Plaintiff but failed to receive the responsive letter from Defendants. Specifically, the personnel director spoke unsuccessfully with both an administrative assistant and a director, as well as the chairman, of the Springfield commission. Because she did not receive a reference, verbal or written, the director contacted a local newspaper and obtained unfavorable articles regarding McGuffin. Needless to say, McGuffin's efforts to secure employment in Chapel Hill fell short.

As a result of his former employer's inaction, Plaintiff claims his prospects for receiving the position were substantially diminished and his professional reputation harmed. He seeks compensatory damages of $50,000, reimbursement of fees and costs, and an order insuring future compliance.

### *Civil Contempt*

■ Civil, as well as criminal, contempt proceedings arise under 18 U.S.C. § 401:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as ...

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

*See Nelson v. Steiner,* 279 F.2d 944, 947 (7th Cir.1960); *KSM Fastening Systems, Inc. v. H.A. Jones Co.,* 776 F.2d 1522, 1525 n. 3 (Fed.Cir.1985); *In re Jaques,* 761 F.2d 302, 305 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1259, 89 L.Ed.2d 570 (1986); *United States ex rel. Shell Oil Co. v. Barco Corp.,* 430 F.2d 998, 1000–01 (8th Cir.1970); *McDonald's Systems, Inc. v. Mason,* 552 F.Supp. 707, 709 (N.D.Ill.1982). Before a court may invoke the statute, however, it must be able to cite a decree which "sets forth in specific detail an unequivocal command" violated by the party in contempt. *Ferrell v. Pierce,* 785 F.2d 1372, 1378 (7th Cir.1986), *citing H.K. Porter Co. v. National Friction Products,* 568 F.2d 24, 27 (7th Cir.1977). Furthermore, the accused must have notice of and opportunity to contest the issue. *Ferrell,* 785 F.2d at 1383; *American Fletcher Mortgage Co. v. Bass,* 688 F.2d 513, 519 (7th Cir.1982); *Rogers v. Webster,* 776 F.2d 607, 611–12 (6th Cir.1985).

Whether an action sounds of civil or criminal contempt depends in large part on the character and purpose of the relief sought. *Shillitani v. United States,* 384 U.S. 364, 369, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622 (1966); *Shakman v. Democratic Org. of Cook County,* 533 F.2d 344, 348–49 (7th Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). As § 401 indicates, both proceedings allow a court the option of imposing imprisonment and/or monetary fines. Nevertheless, the punishment for criminal contempt is intended to be punitive so as to vindicate the court's authority, while sanctions in a civil setting are "employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, [and] to compensate the complainant for losses sustained." *Shakman,* 533 F.2d at 349, *quoting, United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). *Accord Commodity Futures Trading Comm'n v. Premex, Inc.,* 655 F.2d 779, 785 (7th Cir. 1981); *In re Magwood,* 785 F.2d 1077, 1081

(D.C.Cir.1986); *Federal Election Comm'n v. Gus Savage for Congress '82 Comm.,* 606 F.Supp. 541, 547 (N.D.Ill.1985). Thus, the thrust of the penalty assessed in the latter case is remedial and may take the form of a fine in the amount of damages as well as costs and fees incurred. *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 444, 447, 31 S.Ct. 492, 499, 500, 55 L.Ed. 9 (1911); *Squillacote v. Meat & Allied Food Workers,* 534 F.2d 735, 748 (7th Cir.1976); *Quinter v. Volkswagen,* 676 F.2d 969, 975 (3d Cir.1982).

Another difference between the two lies in the nature of their respective proceedings. Civil contempt litigation continues as part of the suit from which it arises and is governed by the same procedural rules. No separate statutory action is needed. *Skinner v. White,* 505 F.2d 685, 689 (5th Cir.1974); *McDonald's Systems,* 552 F.Supp. at 709–10; 3 C. Wright, Federal Practice & Procedure § 705 (1982). In contrast, a criminal contempt charge is brought in the name of the United States and governed by the due process requirements enumerated in Fed.R.Crim.P. 42. *Bray v. United States,* 423 U.S. 73, 75–76, 96 S.Ct. 307, 309–10, 46 L.Ed.2d 215 (1975); *In re Jafree,* 741 F.2d 133 (7th Cir.1984); *Schleper v. Ford Motor Co.,* 585 F.2d 1367, 1371 (8th Cir.1978); *United States v. Rizzo,* 539 F.2d 458, 463 (5th Cir.1976). *But see United States v. Powers,* 629 F.2d 619, 624 (9th Cir.1980) (procedural safeguards of Fed.R.Crim.P. 42 apply equally to civil contempt).

Civil contempt proceedings are generally summary in character. 11 C. Wright & A. Miller, Federal Practice & Procedure § 2960 (1973). Nevertheless, findings of fact and conclusions of law are appropriate, and indeed encouraged on contempt motions. *Jewel Tea Co. v. Kraus,* 204 F.2d 549, 550 (7th Cir.1953); *Bergen v. Bergen,* 439 F.2d 1008, 1013–14 (3d Cir.1971). Federal courts acknowledge that the procedures involved are similar to those in a tort action: "Much like a tort action, the complainant must prove that the defendant's actions in violation of the court order caused him injury." *Thompson v. Cle-*

*land,* 782 F.2d 719, 722 (7th Cir.1986). *Accord Parker v. United States,* 153 F.2d 66, 70 (1st Cir.1946) (establishing analogy to tort). The Court, then, is not free to exercise its discretion and withhold an order in civil contempt awarding damages, to the extent proven, but it does retain broad discretion in fashioning an equitable remedy to insure future compliance. *Thompson,* 782 F.2d at 722; *Vuitton v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir.1979).

Consistent with the tort analogy, the Supreme Court has likewise determined that the absence of wilfulness should not bear upon the outcome of a civil contempt hearing:

> Since the purpose is remedial, it matters not with what intent the defendant did the prohibited. The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey specified provisions of [the court's order]. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently. The force and vitality of judicial decrees derive from more robust sanctions.

*McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). In other words, "good intentions cannot sterilize conduct otherwise contemptuous." *Commodity Futures,* 655 F.2d at 784. *Accord Dunlap v. City of Chicago,* 435 F.Supp. 1295, 1300 n. 5 (N.D. Ill.1977).

■ Still, two important differences from the garden variety tort suit should be noted. First, Plaintiff must prove a violation of the decree by clear and convincing evidence; a bare preponderance will not suffice. *United States v. Huebner,* 752 F.2d 1235, 1241 (7th Cir.), *cert. denied,* ─ U.S. ─, 106 S.Ct. 62, 88 L.Ed.2d 50 (1985); *In re Weiss,* 703 F.2d 653, 662 (2d Cir.1983); *Stringfellow v. Haines,* 309 F.2d 910, 912 (2d Cir.1962) (per Friendly, J.). Although apparently no court has addressed the issue, this increased burden, however, appears inapplicable to the question of damages. *Cf. Mineworkers,* 330 U.S. at 304, 67 S.Ct. at 677, 91 L.Ed. at 884

(fine must be based upon evidence of complainant's actual loss); *Leman v. Krentler-Arnold Hinge Last Co.,* 284 U.S. 448, 455–56, 52 S.Ct. 238, 241, 76 L.Ed. 389 (1932); *In re Kave,* 760 F.2d 343, 351 (1st Cir. 1985). Second, no right to a jury exists in civil contempt proceedings. *Shillitani,* 384 U.S. at 365, 371, 86 S.Ct. at 1531, 1536, 16 L.Ed.2d at 622; *In re Grand Jury Investigation,* 600 F.2d 420, 423 n. 7 (3d Cir.1979); *Warehouse, Mail Order, Office, Technical & Professional Employees v. Columbia Rustproof, Inc.,* 550 F.Supp. 73, 74 n. 3 (N.D.Ill.1982).

With the above review in mind, a discussion of the present controversy is now in order.

### Analysis

■ Defendants do not dispute their alleged failure to send the responsive letter concerning Plaintiff to the Chapel Hill Housing Authority. Rather, they assert that although no letter was mailed, McGuffin's position is nevertheless without merit.

Initially, the Housing Board contends the consent decree was not violated since the prospective employer did not specifically request a letter of recommendation. This argument rings hollow. Judge Ackerman's order in no way indicates that a specific request was necessary: "The Springfield Housing Authority *will answer all inquiries ... by a letter....*" (emphasis added). This language demonstrates neither the Court nor the parties intended a demand as a condition precedent to Defendants' duty under the agreement. Simply stated, the approved settlement sets forth an "unequivocal command" which the Defendants overlooked. *Ferrell,* 785 F.2d at 1378. The Chapel Hill authority made inquiry without receiving the proper response. The local agency's admitted failure to comply with the settlement terms, albeit unwilful, manifests clear and convincing evidence of its noncompliance.

Defendants next attempt to create an ambiguity in the decree by referring to the unincorporated form letter attached to the order which states: "I am in receipt of your letter ... regarding Robert McGuf-

fin's application for employment...." They maintain this language reflects an intent that the response was to be delivered only after written inquiry. Since the prospective employer phoned the Defendants, the latter had no duty to reply. Such reasoning, however, is unpersuasive. The Court reads the letter in light of the order's clear directive—not vice versa. The decree's unambiguous instruction applies to "all inquiries." McGuffin should not be penalized merely because the parties in drafting the response failed to consider alternative modes of communication.

Citing *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), Respondents further maintain that because McGuffin himself eventually sent a copy of the letter of recommendation and nothing they could do at this time would affect the prior employment decision of Chapel Hill, the issue is moot. This argument, like the first, will not fly. *Rylander* is inapplicable to the case at bar. First, that decision in no way addressed the possible compensatory aspect of a contempt finding previously discussed. Rather, the case speaks only to its coercive component. *Rylander* stands for the proposition that where compliance with a court order demanding a single act (production of documents under an IRS summons) is impossible, neither the moving party nor the court has any reason to proceed with a civil contempt action to coerce compliance. *Id.* at 757, 103 S.Ct. at 1548, 75 L.Ed.2d at 521. *Accord United States ex rel. Thom v. Jenkins,* 760 F.2d 736 (7th Cir.1985).

Admittedly, delivering the responsive letter to the North Carolina Housing Authority would now be useless. Nevertheless, Defendants have not alleged that they would be unable to comply with the consent decree if further inquiries by prospective employers of McGuffin were made. Thus, the issue is not moot, but has continuing life. The Housing Board's legal duty under the settlement does not end with the first inquiry. Unlike *Rylander* where one act would have satisfied the Defendant's obligation, the Housing Board is faced with a continuing duty to answer "all inquiries."

■ Finally, the Board insists Plaintiff's claim is barred by the equitable doctrine of laches—inexcusable delay in bringing a claim which operates to prejudice the Defendant. *Citation Cycle Co. v. Yorke,* 693 F.2d 691, 695 (7th Cir.1982). This assertion also must fall. The alleged violation of the decree occurred in May 1983. McGuffin filed his petition for a rule to show cause in April 1985, less than two years after the offense. Since civil contempt actions are analogous to tort suits, it seems logical to compare the statute of limitations for a negligence claim with Plaintiff's delay. In Illinois, a party has two years from the date of injury in which to bring an action. Ill.Rev.Stat. ch. 110, ¶ 13–202 (1985). Here, Plaintiff brought his motion within that time period. Thus, no inexcusable delay is apparent.

■ Even assuming, however, that McGuffin's delay is inexcusable, Defendants must still show prejudice to prevail. Laches is not based merely upon time, but also upon changes in conditions or relationships involved with the claim. *Lingenfelter v. Keystone Consol. Indus.,* 691 F.2d 339, 340 (7th Cir.1982). In this instance, Respondents assert they will suffer severe prejudice if this proceeding is not dismissed since Plaintiff could have resolved the problem by asking his former employer to send the letter at the time of his application in Chapel Hill. But this argument suggests that McGuffin had a duty to perform both sides of the settlement. Such argument is without foundation. The consent decree imposed an obligation upon the Board which it failed to fulfill. In short, Defendants can show no prejudice.

In sum, this Court must hold the Springfield Housing Authority and members of its governing board in civil contempt for violating the consent decree. Indeed, their inaction was unwilful. Any punitive measure is thus unwarranted. Nevertheless, the Defendants did fail to abide by the clear, strict terms of Judge Ackerman's order. Their lack of intent to harm McGuffin is irrelevant. *McComb,* 336 U.S. at 191, 69 S.Ct. at 497, 93 L.Ed. at 599. The teaching of the Seventh Circuit is appropri-

ate here: "The district court may find a defendant in civil contempt if [it] has not been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *American Fletcher*, 688 F.2d at 517, *quoting, Powell v. Ward*, 643 F.2d 924, 931 (2d Cir.), *cert. denied*, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981).

*Ergo*, Plaintiff's motion for an order adjudging Defendants in civil contempt is ALLOWED.