Willie May ETHERIDGE, et al.

v.

William E. BEASLEY, et al.

Civ. No. C-81-01-A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 23, 1981.

Gary Leshaw, Decatur, Ga., for plaintiffs.

Curtis E. Anderson, Asst. U. S. Atty., Atlanta, Ga., for defendants.

## ORDER

O'KELLEY, District Judge.

On January 1, 1981, the plaintiffs filed this law suit seeking declaratory and injunctive relief from the defendants' actions which the plaintiffs allege have denied them their rights under the National Housing Act, 12 U.S.C. § 1701, et seq. (1976) (as amended)[1] Specifically, the plaintiffs allege that defendants Beasley and Landrieu[2] erroneously construed applicable federal regulations in refusing to accept assignment of the plaintiffs' home mortgage and that, as a result thereof, the defendant Commonwealth Corporation (hereinafter "Commonwealth") has instituted foreclosure proceedings against the plaintiffs. On January 5, 1981, the plaintiffs requested the court to enter an order temporarily restraining Commonwealth from

[1] In paragraphs 6, 10, 11 and 12 of its complaint, the plaintiffs erroneously alleged that they purchased their home pursuant to Section 235 of the National Housing Act, 12 U.S.C. § 1715z. Consequently, the plaintiffs filed a motion to amend their complaint on April 20, 1981 in order to correct the record to reflect that their home was financed by a private lender participating in the HUD–FHA Mortgage Insurance Program authorized by the National Housing Act, 12 U.S.C. § 1701 et seq. (1976) (as amended). The plaintiffs also seek to add a verification of the complaint by Danny O. Etheridge. In a second motion to amend its complaint filed May 1, 1981, the plaintiffs request leave to rephrase paragraph 12 of their complaint to meet the federal defendants' objection to it. In light of the liberal standard enunciated in Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), for granting leave to amend and because of their minor nature, the court grants the plaintiffs' motions to amend their complaint.

[2] The plaintiffs brought suit against Mr. William E. Beasley individually and in his official capacity as Director of the Loan Management Branch of the Atlanta Area Office of the Department of Housing and Urban Development (hereinafter "HUD"). Mr. Moon Landrieu is sued individually and in his official capacity as the Secretary of HUD. Defendants Beasley and Landrieu will hereinafter be referred to as the federal defendants.

foreclosing on the plaintiffs' property or, alternatively, to order HUD to re-open the assignment process so that foreclosure proceedings could not continue. After a hearing at which all parties were present and presented argument, the court temporarily enjoined the defendants from foreclosing upon the property owned by the plaintiffs at 2444 Hillside Avenue, Decatur, DeKalb County, Georgia. As a condition of the restraining order, the plaintiffs were required to pay the Commonwealth its expenses for publication of the notice of foreclosure and for insurance and taxes Commonwealth advanced to the plaintiffs. As a further condition of the restraining order, the plaintiffs were required to pay Commonwealth their monthly mortgage payments commencing with January of 1981. By consent of the parties, the restraining order was to stay in effect until further order of the court. Presently pending before the court are the federal defendants' motion to dismiss, or, in the alternative, for summary judgment, Commonwealth's motions to dissolve the injunction and for judgment on the pleadings or, in the alternative, for summary judgment, and the plaintiffs' motion for summary judgment. The court held a hearing on July 2, 1981 at which all parties presented oral argument on the above-mentioned motions.

The facts of this case are relatively simple and not in dispute. On or about October 30, 1978, the plaintiffs purchased a house located at 2444 Hillside Avenue, Decatur, DeKalb County, Georgia. The purchase of the house was financed by Commonwealth, a private lender participating in the HUD–FHA mortgage insurance program authorized by the National Housing Act, 12 U.S.C. § 1701 et seq. (1976) (as amended). The plaintiffs failed to pay their mortgage payments due on August 1, 1979, September 1, 1979 and October 1, 1979. By a letter dated October 5, 1979, Commonwealth informed the plaintiffs that their mortgage was in default in the amount of $656.04 for the months of August, September and October, 1979. On or about October 25, 1979, the plaintiffs mailed a check in the amount of $656.04 to

Commonwealth; this check was received by Commonwealth on October 29, 1979 and applied to the plaintiffs' account on November 5, 1979. This payment brought the plaintiffs' account current through October of 1979. The plaintiffs did not make their payment due the first of November or December of 1979 or those due the first of January and February of 1980. On or about February 26, 1980, Commonwealth informed the plaintiffs that foreclosure was imminent and of their option to request that HUD accept their mortgage. Under the mortgage assignment program operated as part of the insured home mortgages program, homeowners remain in possession of their home and HUD becomes the mortgagee. As mortgagee, HUD works with the homeowner to develop a mutually acceptable repayment plan with a goal of avoiding foreclosure. As a result of a nationwide class action against HUD, *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974) (subsequently known as *Ferrell v. Landrieu*), HUD published two handbooks governing the assignment program, HUD Handbook 4191.1 Rev. and Handbook 4191.2, and promulgated the regulations commencing at 24 C.F.R. § 203.650. Generally, under the new regulations and HUD handbooks, HUD is required to accept assignment of applicants' mortgages if certain requirements are met. One of these requirements is that "[t]he mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the delinquency within a reasonable time or make full mortgage payments." 24 C.F.R. § 203.650(5).

On or about March 7, 1980, the plaintiffs formally requested that HUD accept assignment of their mortgage. HUD acknowledged the foregoing communication in a letter dated March 13, 1980, and held foreclosure proceedings in abeyance pending review of their assignment request. By letter dated October 31, 1980, HUD formally denied plaintiffs' assignment request because (1) the "Current or operative default" occurred on August 1, 1979 and (2) plaintiffs' failed to demonstrate that the August

1, 1979 default was caused by circumstances beyond their control within the meaning of the applicable handbooks and regulations. It is to this determination that the plaintiffs object.

The crux of the dispute between the parties is whether HUD acted properly by invoking the "two month rule" to place the date of default for determining whether the default was due to circumstances beyond the mortgagor's control in August of 1979 rather than October of 1979. The plaintiffs argue that HUD's utilization of the "two month rule" is plainly inconsistent with the federal regulations and guidelines governing the assignment program. The federal defendants counter that the two month rule is a valid component of the overall procedures implementing regulations governing the home mortgage assignment program and was approved in the nationwide class action of *Ferrell v. Landrieu*, No. 73–C–334 (N.D.Ill. Aug. 2, 1979).

After careful review of the pertinent statutes, regulations, and guidelines and the briefs, affidavits, and exhibits presented by the parties, the court concludes that the federal defendants utilized an incorrect legal standard in determining that the plaintiffs' default was not due to circumstances beyond their control. As previously stated, the plaintiffs purchased their home under the HUD–FHA Mortgage Insurance Program authorized by the National Housing Act, 12 U.S.C. § 1701 et seq. (1976) (as amended). The Mortgage Insurance Program is designed to make home ownership more accessible to low income families by lowering private mortgagees' risk in accepting mortgages from persons with low incomes. In exchange, participating mortgagees agree to accept limited down payments, reduced interest rates, and longer maturities than they normally would obtain in the market place. *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974). In addition, mortgagees under the program are required to comply with certain procedures should the mortgage notes fall in arrears. After an account remains in default for three months, the mortgagee may initiate foreclosure proceedings; however, it first must notify the mortgagor that he is entitled to request HUD to accept assignment of the mortgage from the private mortgagee. As previously stated, HUD is required to accept assignment of mortgages insured under the mortgage insurance program when certain conditions are met. The crucial condition for purposes of this litigation is the requirement that "[t]he mortgagor's *default* has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to correct the *delinquency* within a reasonable time or make full mortgage payments." [Emphasis added]. 24 C.F.R. § 203.650(5). Section 203.330 of the Code of Federal Regulations further defines the terms delinquency and default:

> A mortgage account is delinquent any time a payment is due and not paid. If the mortgagor fails to make any payment, or to perform any other obligation under the mortgage, and such failure continues for a period of 30 days, the mortgage shall be considered in default for the purposes of this part.[3]

---

**3.** In their reply memorandum to the plaintiffs' motion for summary judgment, the federal defendants argue that the definition of default and delinquency contained in 24 C.F.R. § 203.-330 do not apply to the "two month rule" component of HUD's Single Family Home Assignment Program. As the court understands their argument, they contend that the definition of default and delinquency contained in section 203.330 was promulgated as "part and parcel" of HUD regulations promulgated in 1971 and subsequently criticized in *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill.1974). The federal defendants argue that, while section 203.330 was not repealed, it was not included by reference or otherwise in the new mandatory regulations promulgated in 1976 as a result of the nationwide class action in *Brown*.

The federal defendants overlook, however, that, in the "Declaration of Phillip Forest" included as government exhibit B to their motion for summary judgment, Mr. Forest concedes that 24 C.F.R. § 203.330 contains the applicable definition of default. In addition, section 203.330 by its very terms applies to section 203.650, as it defines default "for the purposes of this Part." Finally, the court's decision in *Brown v. Lynn* did not review the definition of delinquency and default contained in section 203.330: it reviewed only sections 203.9, 203.340, 203.342

Thus, it would appear that the default to which 24 C.F.R. § 203.650(5) refers is thirty days after a payment is due and not paid. In rejecting the plaintiffs' request for assignment, however, the federal defendants stated that:

Our guidelines for processing assignment [sic] requests require us to go back on your payment history to the time that your account was last current for two or more months. There was some confusion regarding the actual date on which your July mortgage payment was made to the mortgage company. Our original determination indicated that the missed payment took place in July 1979. Information you provided indicates that the July 1979 payment may have been paid on time but the August 1979 payment was not paid until November 1979. Therefore, the date of default is August 1979. You did not present evidence at the appeal conference which prove [sic] that the default was caused by circumstances beyond your control.[4]

The guidelines to which the federal defendants refer is HUD Handbook 4191.2. The promulgation of this handbook was provided for by the court approved consent order in *Ferrell v. Landrieu*, No. 73–C–344 (N.D.Ill.1979). Chapter two of the handbook discusses assignment eligibility criteria, including the requirement that the default be caused by circumstances beyond the mortgagor's control. After giving examples of qualifying reasons for default, the handbook contains the following note:

The current default is the only one to be considered in determining whether the mortgagor is in default due to circumstances beyond his or her control. If the record indicates that the present default was caused by some circumstance beyond the mortgagor's control, regardless of past history, this criterion is satisfied. If, however, the account was already delinquent when the qualifying circumstance first appeared, this criterion may or may not be satisfied. The mortgagor's ability to avoid the default may have been affected by the amount of the delinquency which already existed at the time the qualifying circumstance occurred; judgment must be exercised. Judgment is required also when an account, which has been chronically in default in the past, is current for one or two months and then a circumstance beyond the mortgagor's control arises and the account goes into default. Generally, if the account was current for two or more months immediately preceding the present default, the default should be considered to be a new one.

It is the last two lines of this note that the federal defendants contend *require* them to establish the relevant date of default as thirty days after the due date of the first missed payment, following two successive months of full payment. For the foregoing reasons, the court concludes that, while it may be a reasonable rule, it is simply not a reasonable construction of HUD regulations and guidelines.

The federal defendants primary argument is that HUD's two month rule is designed to prevent abuses by chronic defaulters[5] by allowing the agency to make an informed judgment concerning the circumstances surrounding the default. The federal defendants argue that HUD needs the two month rule in order to reach those mortgagors who pay on a quarterly rather than monthly basis.[6] In addition, the federal defendants argue that, without the two

---

and 203.350. Accordingly, the court concludes that 24 C.F.R. § 203.330 contains the applicable definition of default for section 203.650.

4. In their brief, the federal defendants define the default date applicable to 24 C.F.R. § 203.-650(a)(5) as "thirty (30) days after the due date of the first missed payment, following two successive months of full payment."

5. Neither the regulations nor the handbook define "chronic defaulter."

6. The federal defendants fail to note that, with or without the two month rule, a mortgagee could make his mortgage payments on a quarterly basis without risking foreclosure. It is only when mortgage payments are in default for three or more months that a mortgagee can begin foreclosure proceedings.

month rule, chronic defaulters could avoid HUD review of their past default record by momentarily catching up with their payments immediately before they expect to be confronted with adverse circumstances which HUD would consider to be beyond their control. An application of the rigid one month rule espoused by the plaintiffs, they argue, would give HUD no opportunity to evaluate the circumstances surrounding the default. The federal defendants also point out that, once HUD has accepted assignment, a chronic defaulter could stay in possession of the house up to a year or more without making mortgage payments. Finally, the federal defendants contend that the only reason the two month rule was not made mandatory is to allow HUD to look back to an earlier default when a rigid application of the two month rule would *not allow consideration of earlier adverse circumstances which were beyond the mortgagor's control.* They argue that the general nature of the rule was never intended to permit HUD to review a later default when a mortgagor had not remained current for two or more months.[7]

The court does not find these arguments to be persuasive. First and foremost, neither the federal regulations nor the HUD handbook contain a two month *rule.* There is no hint of such a rule in the federal regulations. In fact, applying accepted rules of statutory construction would lead one to reach the conclusion espoused by the

plaintiffs, *i.e.,* that the relevant date of default is thirty days after a payment is due and unpaid. The only suggestion of a two month rule is in the last two sentences in a note to HUD guidelines. Read in conjunction with the rest of the note, however, it would be unreasonable to conclude that the note authorized the application of a two month rule as defined by the federal defendants to "chronic defaulters," particularly in light of the fact that the remainder of the guidelines strictly forbid reviewing an applicant's past credit history.[8]

The federal defendant's argument that the court-approved consent decree in *Ferrell, supra,* requires them to apply the two month rule is equally unavailing. As previously stated, the note on which the federal defendants rely does not even establish a two month rule: it calls for judgment to be applied. The federal defendants make much of the statement in the consent order that

> HUD Handbook 4191.2, attached hereto as Appendix A, shall constitute binding instructions for implementation of the assignment program subsequent to the entry of this order. The Department shall administer the assignment program substantially in accordance with the terms of said Handbook.

*Ferrell v. Landrieu, supra,* slip op. at Appendix A, p.3. This statement, however, in no way alters the fact that the note is not

**7.** This conclusion, however, is directly contrary to the express language in the note which explicitly refers to applying judgment when an account which has been chronically in default in the past is current for one or two months and then goes into default because of circumstances beyond the mortgagor's control. Moreover, the note states that 24 C.F.R. § 203.-650(5) may be satisfied even if the account is already delinquent when the qualifying circumstance arises.

**8.** *See e.g.,* HUD Handbook 4191.2 at page 3–6 which states that with respect to reinstatement of mortgages:

> [i]f an account is fully reinstated for any reason after HUD consideration of assignment begins but before assignment has been accepted or rejected, the case should be closed and recorded as having been returned

to the mortgagee for forbearance. Regardless of the time of reinstatement, if the account again goes into default, the mortgagee must comply with the assignment program requirements to the same extent as if the case had never been in default before. The fact that HUD may have considered and rejected an assignment as the result of an earlier default is immaterial.

> *See also,* HUD Handbook 4191.2 at page 2–4 which states that with respect to the mortgagor's ability to resume full mortgage payments:

> [f]uture ability to pay—not present income or credit history—is the key factor in evaluating this criterion. No applicant for assignment shall be determined ineligible based *simply upon lack or type of income at the time the assignment request is processed.*

couched in mandatory terms.[9] The federal defendants' statement that the plaintiffs are attempting to "undermine and unravel" the settlement agreement in *Ferrell, supra* is therefore totally without substance.

Accordingly, and without deciding whether the plaintiffs will ultimately be entitled to require HUD to accept assignment of their mortgage, the court concludes that the federal defendants used an improper legal standard in denying the plaintiffs' request for assignment. The court concludes that the regulations and guidelines do not mandate the application of a two month rule or a one month rule; they rather require HUD officials to exercise their independent judgment in determining whether, in light of all the surrounding circumstances, the mortgagor's default was beyond his or her control.

The court therefore grants the plaintiffs' motion for summary judgment and denies the federal defendants' motion for summary judgment. As the complaint fails to state a cause of action against Commonwealth for failure to comply with the appropriate mortgage servicing procedures, its motion for judgment on the pleadings or in the alternative for summary judgment is granted. In light of the above rulings, Commonwealth's motion to dissolve the injunction is now moot.

In sum, the (1) plaintiffs' motion to amend its complaint is granted, (2) the defendant Commonwealth's motion for judgment on the pleadings or, in the alternative, for summary judgment is granted, (3) the plaintiffs' motion for summary judgment against defendants Beasley and Landrieu is granted, (4) defendants Beasley and Landrieu's motion to dismiss or, in the alternative, for summary judgment is denied, and (5) the defendant Commonwealth's motion to dissolve the injunction is dismissed as moot. Defendants Beasley and Landrieu are hereby enjoined from taking any action or from failing to take any action that would allow Commonwealth to foreclose on the plaintiffs' property located at 2444 Hillside Avenue, Decatur, DeKalb County, Georgia, until such time as they determine, under the legal standard set forth herein, whether the plaintiffs are entitled to require HUD to accept assignment of their mortgage under the mortgage insurance program authorized by the National Housing Act, 12 U.S.C. § 1701 et seq. (1976) (as amended).

---

9. If HUD Handbook 4191.2 is binding on HUD as the federal defendants claim, if anything, it mandates that HUD apply independent judgment, not that it apply a rigid two month rule.