James and Joyce FERRELL, et al.,
Plaintiffs-Appellees,

v.

Samuel R. PIERCE, Jr., Secretary of the United States Department of Housing and Urban Development (HUD), et al., Defendants-Appellants.

No. 85–2186.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1985.

Decided March 21, 1986.

William P. Wilen, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellees.

Robert Ziner, Dept. of HUD, Office of Litigation, Washington, D.C., for defendants-appellants.

Before BAUER and WOOD, Circuit Judges, and GRANT, Senior District Judge.*

PER CURIAM.

This is an appeal from a district court order holding the United States Department of Housing and Urban Development ("HUD") in contempt of court. The district court based its contempt citation upon its finding that HUD had violated the terms of a 1979 consent decree. The 1979 consent decree superseded a 1976 consent decree which settled a class action suit filed by mortgagors who potentially were eligible for a federal government mortgage assistance program. The contempt citation grew out of a dispute over how HUD should calculate a mortgagor's date of default in determining whether the mortgagor qualifies for relief under the program. For reasons detailed below, we vacate the contempt citation and remand this case.

## I. FACTS

### A. Case History

The plaintiff class filed this nationwide class action suit against HUD in 1973, alleging that HUD had violated its duties

---

* The Honorable Robert A. Grant, Senior District Judge from the Northern District of Indiana, is sitting by designation.

under 12 U.S.C. § 1715u (1976) and other housing statutes to provide relief to homeowners with HUD-insured mortgages who faced foreclosure because of their defaults. The plaintiff class consists of members who applied for HUD's mortgage assignment program and were rejected by HUD. In 1976, the parties agreed to a consent decree settling the case. In November of 1979, the district court approved an amended decree which superseded the 1976 consent decree.

The 1979 amended decree incorporated HUD Handbook 4191.2 (now numbered 4330.2) as "binding instructions" for implementing the amended decree. Under the terms of paragraph 3 of the amended decree, HUD is required to administer the amended decree substantially in accordance with the terms of the Handbook, is prohibited from making any modifications during the term of the agreement which would curtail the basic rights of mortgagors under the program then in existence, and is required to give notice to plaintiffs' counsel prior to final action on any modification. Paragraph 14 of the amended decree sets out the duration of the obligations:

> Except as provided in this paragraph, the rights and obligations created by the Amended Stipulation shall terminate five years from date of execution [August 2, 1979 to August 2, 1984]. The termination of the Department's specific obligations under this Amended Stipulation shall not diminish or compromise the Department's obligation construed under the National Housing Act as amended, and Section 2 of the Housing Act of 1949 and Section 2 of the Housing and Urban Development Act of 1968 to provide foreclosure avoidance relief for mortgagors in temporary financial distress, and the Department shall provide assistance or relief in the form of the present assignment program or an equivalent substitute to permit mortgagors in default on their mortgages to avoid foreclosure and to retain their homes during periods of temporary financial distress.

In 1980, Congress enacted the Housing and Community Development Act of 1980, Pub.L. No. 96–399, 94 Stat. 1614 (1980), which authorized HUD to establish a Temporary Mortgage Assistance Program ("TMAP"), a less costly method of providing mortgage foreclosure assistance to homeowners of HUD-insured mortgages. In 1982, HUD promulgated regulations to implement TMAP.

HUD moved for the district court to modify the 1979 amended decree to specify that the TMAP regulations were not subject to the decree. Plaintiffs, contending that HUD failed to live up to the 1979 decree, moved to hold HUD in contempt. On April 7, 1983, the district court denied both motions. *Ferrell v. Pierce*, 560 F.Supp. 1344 (N.D.Ill.1983), *aff'd*, 743 F.2d 454 (7th Cir. 1984) (Coffey, J., dissenting). The court did hold that the TMAP regulations were subject to the decree and violated the decree. The court enjoined HUD from implementing the regulations. 560 F.Supp. at 1372.

One issue that arose during the 1983 proceedings was the proper method of calculating a mortgagor's date of default. The district court adopted the plaintiffs' view, which made some mortgagors eligible for the assistance program under circumstances where the HUD and TMAP rules would preclude assistance. On July 11, 1983, the district court issued a clarifying opinion which again adhered to the plaintiffs' view of determining the date of default.

On April 5, 1984, the district court ordered HUD to reprocess, using the court's rule to calculate the date of default, all mortgagor requests to participate in the assignment program which were either pending on July 11, 1983, or had been reopened after that date. HUD did not appeal this order and has used the district court's rule to process all applications for the mortgage assignment program since July 11, 1983.

On June 27, 1984, after the time for HUD to appeal the district court's order had expired, plaintiffs filed a petition for

contempt against HUD and three past or present HUD officials which led to this appeal. The plaintiffs contended that HUD was in contempt of the 1979 consent decree in using a different date of default rule (than the district court's 1983 construction) between January 1, 1980, and the district court's July 11, 1983 decision. On March 2, 1985, the district court issued a lengthy opinion holding HUD in civil contempt. The court ordered HUD to reprocess *de novo* all applications HUD had rejected in whole or in part because of HUD's rule since January 1, 1980, and to offer mortgagors entitled to relief their former property or a comparable one on terms at least as favorable as their prior mortgages. If HUD could not do either, the court ordered HUD to pay compensatory money damages.

On April 8, 1985, HUD moved pursuant to Fed.R.Civ.P. 59, asking the district court to vacate the contempt order, grant a new trial, and enter judgment denying the contempt citation. HUD raised two arguments: (1) HUD had been surprised by the district court's resolution of the contempt issue on a factual finding which HUD did not have an opportunity to litigate, and (2) the factual finding was clearly erroneous. On May 14, 1985, the district court denied HUD's Rule 59 motion. On June 28, 1985, the district court entered an extensive remedial order which specified time limits and methods of notice HUD must use to contact formerly HUD-insured mortgagors who fell within the ambit of the district court's March 2, 1985 order.

B. Calculating the Date of Default

This contempt citation evolved from a controversy over how HUD figured a mortgagor's date of default. Section 1715u authorizes HUD to acquire mortgages in default by paying the mortgagees the unpaid balance of the loan and receiving an assignment of the loan. HUD would then arrange a new payment plan with the mortgagor on more favorable terms, such as lower monthly payments or a suspension of payments for up to thirty-six months until the mortgagor was financially able to re-sume full payments. To be eligible for this program, the mortgagor had to meet certain criteria, one of which was that "[t]he default must have been caused by a circumstance or set of circumstances beyond the mortgagor's control which temporarily renders the family financially unable to cure the delinquency within a reasonable time or make full mortgage payments." HUD Notice 76–43 at ¶ 3(e) (incorporated into the 1976 consent decree).

The HUD Notice gave examples of circumstances that satisfied this criterion, but neither HUD Notice 76–43 nor Mortgagee Letter 76–9 (also incorporated into the 1976 consent decree) clearly specified how HUD should calculate when the necessary circumstances and the default itself had occurred. In the not uncommon situation where a mortgagor defaults more than once (*i.e.*, fails to make a full mortgage payment within thirty days of the due date more than once), the documents incorporated into the 1976 consent decree, and the subsequent 1979 amended decree, did not clearly specify which date HUD should use as the date of default.

The following hypothetical illustrates how the dispute over the proper date of default may arise. Prior to January 1, 1980, mortgagor *M* is current. Beginning on January 1, 1980, *M* is more than thirty days late on all payments for the next three years, making only twenty-four of the thirty-six payments. On July 1, 1981, *M* loses his job (a circumstance qualifying him for the mortgage assistance program). If January 31, 1980, is *M*'s date of default, he is not eligible for the assistance program, because the default occurred prior to his job loss. If, however, *M* can "advance" his date of default by counting his twenty-four late payments, his date of default becomes January 31, 1982, which comes after his July 1, 1981 job loss, and *M* is eligible for the assignment program.

HUD, prior to the district court's 1983 decision, had determined the date of default at thirty days following the first missed payment after the account had been current for at least two months. In our

example, using its "two-month rule," HUD would look at $M$'s circumstances occurring prior to January 31, 1980.

The district court, however, rejected HUD's rule and accepted the plaintiffs' argument that HUD should use an advancement rule, *i.e.*, advance the date of default by giving the mortgagor full credit for all late payments. In our example, under the "advancement rule," HUD would look at $M$'s circumstances occurring prior to January 31, 1982. Therefore, under the advancement rule the district court would require HUD to consider the job loss on July 1, 1981, to be the cause of $M$'s default.

### C. The Contempt Citation

The plaintiffs filed this petition for contempt shortly after HUD's time to appeal the district court's April 5, 1984 decision (which interpreted the amended decree to require the advancement rule) lapsed. The class contended that HUD's use of the two-month rule from January 1, 1980, to July 11, 1983 (the time period beginning with the 1979 amended decree and ending with the 1983–84 district court decisions), constituted contempt of the 1979 amended decree.[1]

Plaintiffs contended that the two-month rule violated the amended decree in that it was contrary to the HUD Handbook, HUD regulations 24 C.F.R. §§ 203.330 & 203.331, the district court's 1983–84 decisions, and a court interpretation of the decree in the Northern District of Georgia, *Etheridge v. Beasley*, 532 F.Supp. 266 (N.D.Ga.1981). HUD conceded that it used the two-month rule during the relevant time period, and argued that the amended decree (through its incorporation of the HUD Handbook) had made the rule binding upon HUD until the district court declared a contrary rule in 1983–84. HUD also alleged that the

plaintiffs' petition was facially defective in that it did not allege that any specific provision of the decree "unambiguously required" the advancement rule. HUD also claimed that plaintiffs' petition was barred by laches.

On March 2, 1985, the district court held HUD in contempt. The court relied heavily upon its finding that HUD had not used the two-month rule prior to the 1979 amended decree, but had adopted the rule in 1980 and begun using it "knowing that it was a change in procedure which reduced the mortgagors' rights and after it had been held invalid" in *Etheridge*. This finding rested primarily upon one internal HUD memorandum regarding HUD's Tampa, Florida office. The court refused to allow HUD to introduce evidence that counsel for the plaintiff class had agreed to the two-month rule in negotiations leading up to the 1979 amended decree. The court then rejected HUD's laches defense. Finally, the court held that its prior opinions should be applied retroactively under the doctrine in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The court then ordered far-reaching remedial measures.

Following the district court's lengthy opinion, HUD filed a Rule 59 motion to vacate the contempt order. HUD claimed that the court's critical finding about HUD's nationwide practice prior to the 1979 amended decree was unsupported by the evidence, and HUD presented evidence designed to show that the finding was clearly erroneous. HUD explained that it had not previously offered the evidence because the time period prior to the 1979 amended decree was not in issue—the contempt proceeding had focused on the question of law whether HUD violated the decree, not on questions of fact about HUD's

---

1. Plaintiffs also sought an order requiring HUD to reprocess all applications denied by HUD's Baltimore office after January 1, 1980, not merely those applications denied based upon the two-month rule. ·As grounds for this request, plaintiffs cited the high percentage of denials by that office, which plaintiffs contended was caused by a number of its practices, not

solely by its use of the two-month rule. HUD responded by stating that it would voluntarily reprocess the Baltimore office's denials, and thus the government does not appeal from the district court's subsequent order to carry out that reprocessing, except as to damages, an issue which we find it unnecessary to address.

policy and practice. Thus, HUD had been surprised by the court's key finding. The district court rejected HUD's Rule 59 motion. HUD then sought this appeal.

## II. REVIEW OF THE CONTEMPT CITATION

■ A district court's decision on a contempt petition "is discretionary in character and is not to be reversed except for abuse of such discretion or unless clearly erroneous." *See Walaschek & Associates v. Crow*, 733 F.2d 51, 53 (7th Cir.1984) (quoting *Jewel Tea Co. v. Kraus*, 204 F.2d 549, 551 (7th Cir.1953)). We thus review the two general grounds advanced by the trial court to support the contempt order to see if the order falls within the trial court's realm of discretion. First, the court held that the two-month rule violated the amended decree. Second, the court found that prior to the 1979 amended decree HUD's nationwide practice had been to use the advancement rule, and after the decree HUD changed to the two-month rule in violation of the decree.

### A. Unequivocal Command

■ In order to hold a party in contempt, the court must be able to point to a decree from the court which "set[s] forth in specific detail an unequivocal command" which the party in contempt violated. *See H.K. Porter Co. v. National Friction Products*, 568 F.2d 24, 27 (7th Cir.1977). We must look to the amended decree to determine

whether the decree unambiguously forbid HUD to use the two-month rule (or, conversely, unambiguously required HUD to use the advancement rule).

■ Before examining the decree, however, one point deserves mention because both the district court and the plaintiffs appear to have mistakenly relied upon it. Both the court below in its various opinions and the plaintiffs in their brief and at oral argument at times seemed to argue the proposition that because the district court had, in 1983, interpreted the 1979 amended decree to require the advancement rule, HUD could not now argue that the decree did not unambiguously command the advancement rule for purposes of this contempt proceeding. This proposition is erroneous, because the court in the contempt proceeding faced a different issue than the one it decided when it interpreted the amended decree in 1983.[2] In 1983, the court decided which of two conflicting rules was the correct rule, *i.e.*, the most reasonable interpretation of the decree. In the contempt proceeding, the court had to decide whether the amended decree so unambiguously spelled out the advancement rule that HUD's use of the two-month rule amounted to contempt.[3] We therefore must examine the various provisions of the amended decree which the plaintiffs claim (and the district court held) required HUD, even before the district court's 1983–84 decisions, to use the advancement rule.[4]

---

2. Even if we were to decide that the district court was facing the same issue in both cases, HUD would not be barred because the plaintiffs would have to meet a different, significantly heavier burden of proof in the contempt action. *See* Restatement (Second) of Judgments § 28(4). This would be analogous to the situation where an issue of fact already adjudicated in a civil case would not be res judicata in a criminal case because of the difference of degree of proof necessary. *See, e.g., United States v. Konovsky*, 202 F.2d 721, 726–27 (7th Cir.1953).

3. Because the district court was required to decide a different issue in this case (than the correct interpretation of the 1979 amended decree), it is unnecessary for us to reinterpret the decree. We need only look at what the decree unambiguously required back in 1979, prior to

the district court's 1983–84 interpretations, to determine whether HUD violated an unequivocal command contained in the decree.

4. The parties disagree as to what standard we should use to review the trial court's interpretation of the consent decree. HUD maintains that the trial court's decision is reviewable *de novo* on appeal, citing *Air Line Stewards v. American Airlines*, 763 F.2d 875, 878 (7th Cir.1985). The plaintiffs counter by citing an earlier opinion from this court concerning this case where we noted that the "district court's views on interpretation [of a consent decree] are entitled to deference." *Ferrell v. Pierce*, 743 F.2d 454, 461 (7th Cir.1984). We are inclined to the latter view, given the lengthy history of this litigation before Judge Will and the fact that he authorized the decree in question. In the final analysis, how-

The plaintiffs claim that HUD violated the following provisions by using its two-month rule: (1) Note to HUD Handbook 4330.2 § 2–1; (2) HUD regulations 24 C.F.R. §§ 203.330 & 203.331; and (3) *Etheridge v. Beasley, supra.* For the time being, we will lay aside the question of whether HUD's two-month rule was a change in HUD policy, for that matter is discussed in the next subsection. For now, we look only to see whether HUD's use of the two-month rule, in and of itself, violated the 1979 amended decree.

### 1. HUD Handbook and Regulations

The date of default is referred to in the note to HUD Handbook 4330.2 § 2–1(d).[5] Section 2–1 is captioned *ELIGIBILITY CRITERIA*, and subsection (d) explains and gives examples illustrating when a mortgagor qualifies for assistance based upon a default "caused by a circumstance or set of circumstances beyond the mortgagor's control which temporarily rendered the family financially unable to cure the delinquency within a reasonable time or make full mortgage payments."

Both HUD and the plaintiffs claim that the note to section 2–1(d) supports their

method of calculating the date of default. The plaintiffs argue that the first sentence of the note, which provides that only the "current default" is relevant, supports the advancement rule. The plaintiffs contend that the last sentence, which appears to support the two-month rule, "merely states the obvious: that if the account is current, all past defaults have been cured (*i.e.,* paid)." HUD argues the last sentence of the note incorporates the two-month rule that HUD applied prior to the district court's 1983–84 decisions.

▪ The district court declined to follow the plaintiffs' argument, but ruled instead that the note addressed not the issue of fixing the date of default, but rather the issue of determining the cause of the default. Like the district court, we reject plaintiffs' argument that HUD's use of the two-month rule clearly violated the terms of the note. Indeed, even if we were to reinterpret the note, it is at best ambiguous. The terms plaintiffs rely upon to support their claim, such as "current default" in the first sentence, are susceptible to multiple interpretations and fall far short of spelling out an unequivocal command.[6]

---

ever, the outcome of this appeal would be the same under either standard.

**5.** The note to HUD Handbook § 2–1(d) provides:

> NOTE: *The current default is the only one to be considered in determining whether the mortgagor is in default due to circumstances beyond his or her control.* If the record indicates that the present default was caused by some circumstance beyond the mortgagor's control, regardless of past history, this criterion is satisfied. If, however, the account was already delinquent when the qualifying circumstance first appeared, this criterion may or may not be satisfied. The mortgagor's ability to avoid the default may have been affected by the amount of the delinquency which already existed at the time the qualifying circumstance occurred; judgment must be exercised. Judgment is required also when an account, which has been chronically in default in the past, is current for one or two months and then a circumstance beyond the mortgagor's control arises and the account goes into default. *Generally, if the account was current for two or more months immedi-*

*ately preceding the present default, the default should be considered to be a new one.* (Emphasis added).

**6.** A recurring flaw in the plaintiffs' arguments is their persistent attempts to take ambiguous terms such as "current default" and argue that we should accept all the assumptions and explanations that plaintiffs read into the terms. In a contempt proceeding, we look for an unambiguous command. A term such as "current default," absent further definition, merely begs the question of which date of default is the current one where a mortgagor is chronically in default.

Another problem that colors many of the plaintiffs' arguments is their view of the purpose of HUD's program. Plaintiffs assert the "entire purpose" of the program is to prevent forfeitures. They then argue that every ambiguous provision of the program should be interpreted in such a way as to prevent the most foreclosures. Although this "purpose" may seem correct (and favorable) to plaintiffs, it is overly simplistic. Taken to its extreme, HUD would simply provide assistance to every mortgagor who applies for relief. This is clearly not what Congress intended. The real purpose of the program is to provide relief to *qualified*

Next, plaintiffs argue that sections 203.330 and 203.331, 24 C.F.R. §§ 203.330 & 203.331 (1985), control the date of default and are inconsistent with HUD's two-month rule. The district court followed this argument, particularly with respect to section 203.330, in its contempt order. Section 203.330 [7] is titled "Delinquency and default," and section 203.331 [8] is titled "Date of default." HUD argues that section 203.330 merely defines a default and section 203.331 only applies to HUD's relationship with the mortgagees.

Once again, we need not reassess whether the district court's interpretation of these sections to require the advancement rule is sound. It is enough for us to conclude, as we are forced to do, that these sections are at best too ambiguous to support a finding of contempt. The HUD two-month rule does not violate any unequivocal command, as demonstrated by HUD's arguments that these sections can reasonably be read as consistent with the two-month rule.

As HUD points out, section 203.330 fails to mention the consequences of late payments. The section thus does not state whether late payments operate to advance the date of default for purposes of mortgage assignment relief. HUD interpreted the regulation as merely defining what constitutes a default. Although the district court later rejected HUD's construction of the section, HUD's interpretation violates no unequivocal command.

Likewise, HUD points out that section 203.331, unlike section 203.330, specifically applies only to Subpart B of the regulations, the subpart which governs HUD's insurance contract with the mortgagee. Thus the late payment advancement rule in 203.330 is limited to the regulations dealing with the rights and obligations between HUD and the mortgagee. Under Subpart B, the late payment advancement rule is the only reasonable rule, because under the program, when HUD takes an assignment, it must pay the mortgagee all payments since the mortgagor's date of default. Clearly, different equities and considerations are involved when HUD must calculate the date of default to determine whether the defaulting mortgagor qualifies for the assistance program. Because section 203.331 is expressly limited to a quite different situation than determining whether a mortgagor qualifies for relief,[9] HUD did not violate any unequivocal command by not applying section 203.331 to determine the date of default for purposes of a mortgagor's eligibility for the assignment program. Therefore, HUD's use of the two-month rule did not violate any unequivocal

applicants. The date-of-default dispute in this case concerns differing views on which mortgagors should qualify for relief. Therefore, it is irrelevant which party's rule would prevent more foreclosures.

7. 24 C.F.R. § 203.330 (1985) provides:

§ 203.330 Delinquency and default.

A mortgage account is delinquent any time a payment is due and not paid. If the mortgagor fails to make any payment, or to perform any other obligation under the mortgage, and such failure continues for a period of 30 days, the mortgage shall be considered in default for the purposes of this part.

8. 24 C.F.R. § 203.331 (1985) provides:

§ 203.331 Date of default.

For the purposes of this subpart, the date of default shall be considered as 30 days after—

(a) The first uncorrected failure to perform any obligation under the mortgage; or

(b) The first failure to make a monthly payment which subsequent payments by the

mortgagor are insufficient to cover when applied to the overdue monthly payments in the order in which they became due.

9. The legislative history of sections 203.330 & 203.331 provide support for HUD's argument. Originally both sections applied only to Subpart B of the regulations, which dealt solely with the insurance contract between HUD and the mortgagee. 24 C.F.R. §§ 203.330 & 203.331 (1974). When regulations governing mortgagor eligibility for the assignment program were added to Subpart C in 1976, section 203.330 was amended to include Subpart C. 41 Fed.Reg. 49730, 49734 (1976). Section 203.331 was not amended and thus continued to apply solely to Subpart B. *Id.* In the rulemaking proceeding, HUD explained the difference between Subparts B & C: "Subpart B of the regulations constitutes the insurance contract between the mortgagee and HUD," while the new amendments would "establish a new Subpart C devoted to mortgage servicing concerns." 41 Fed.Reg. 36604–05 (1st paragraph and points # 7 and # 24t) (1976).

command contained in the 1979 amended decree.

## 2. The *Etheridge* Decision

■ The district court also relied upon a decision by Judge O'Kelley in the Northern District of Georgia as enunciating an unequivocable command.[10] *Etheridge v. Beasley*, 532 F.Supp. 266 (N.D.Ga.1981). In that case, the court granted a summary judgment to mortgagors who sought a ruling that HUD could not use the two-month rule. *Id.* at 271. The court concluded that

> without deciding whether the plaintiffs will ultimately be entitled to require HUD to accept assignment of their mortgage, ... the federal defendants used an improper legal standard in denying the plaintiffs' request for assignment. The court concludes that the regulations and guidelines do not mandate the application of a two month rule or a one month rule [*i.e.*, the plaintiffs' advancement rule]; they rather require HUD officials to exercise their independent judgment in determining whether, in light of all the surrounding circumstances, the mortgagor's default was beyond his or her control.

*Id.*

The plaintiffs point to language in the opinion where the court said "applying accepted rules of statutory construction would lead one to reach the conclusion espoused by the plaintiffs, *i.e.*, that the relevant date of default is thirty days after a payment is due and unpaid." *Id.* at 270. Given the equivocal nature of that statement, however, and the *Etheridge* court's later references (in particular the one set out above in the court's conclusion) to the necessity of HUD applying its judgment to each case, *id.* at 270–71 & n. 9, we can only conclude that the *Etheridge* court rejected

both HUD's two-month rule *and* the advancement rule favored by the plaintiffs in favor of a less rigid rule that required HUD to exercise greater judgment. At the very least, HUD's interpretation of *Etheridge* to prohibit only the rigid application of the two-month rule, as opposed to combining use of the rule with judgment, falls short of the violation of an unequivocal command necessary to support a contempt citation.[11] Indeed, the fact that the *Etheridge* court's construction of the decree is arguably at odds with the district court's construction in this case merely points out how ambiguous the provisions of the decree actually are.

Even if we were to conclude that *Etheridge* laid down an unequivocal command, we have some reservations as to whether that decision would support this finding of contempt. The *Etheridge* case was not brought by the plaintiffs in this case, and the Supreme Court decision in *United States v. Mendoza*, 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984), which dealt with the use of offensive collateral estoppel against the government, pointed out the problems involved in allowing a party not involved in a prior suit to use that decision in a subsequent suit against the government. The *Etheridge* opinion bound HUD only in the Northern District of Georgia and did not obligate HUD to seek an opinion from the district court below in this case. Even if HUD did engage in some sort of coverup to circumvent the *Etheridge* decision in the Northern District of Georgia, which plaintiffs allege and HUD vehemently denies, HUD would be in contempt of the *Etheridge* court, not the district court in the current case.

## B. Change in HUD Policy

Although the district court abused its discretion in holding that HUD violated an

---

**10.** We note the *Etheridge* decision was handed down in September, 1981—approximately 21 months after the beginning of the period for which the district court held HUD in contempt. Therefore, even if the *Etheridge* decision constituted an unequivocal command to HUD, HUD could only be in contempt for the time after the decision.

**11.** The district court found that HUD engaged in some sort of "coverup" to avoid following the *Etheridge* decision, but the court's finding was based upon a reading of *Etheridge* that required HUD to use the advancement rule. Since we conclude that HUD's reading of *Etheridge* is at least defensible, the district court's finding of a coverup cannot stand.

unequivocal command in the 1979 amended decree, the court put forth a second ground to support the contempt citation. The court found that, after the 1979 amended decree took effect, HUD switched from using the advancement rule to using the two-month rule. The court concluded:

It is clear that HUD not only used the two month rule, but that it did so knowing that it was a change in procedure [*i.e.*, from the advancement rule] which reduced mortgagors' rights and after [the two-month rule] had been held invalid [in *Etheridge*]. This change curtailed basic rights of mortgagors under the assignment program in violation of paragraphs 3 and 14 of the Amended Stipulation. Whatever HUD's intent, this clear violation of an unambiguous command of our order of November 8, 1979 constitutes contempt. Not only did HUD change the method of calculating the date of default, it did so without following the notice provisions of paragraph 3 of the Amended Stipulation. This action also constitutes contempt of our order.

HUD argues that the district court abused its discretion by finding that HUD changed its policy following the 1979 amended decree. First, HUD argues that the district court failed to base its decision on the "clear and convincing evidence" necessary for a finding of contempt. *See United States v. Huebner*, 752 F.2d 1235, 1241 (7th Cir.1985) (in civil contempt proceeding for violation of consent decree, plaintiffs must prove violation by clear and convincing evidence). HUD then contends that the court abused its discretion in basing its finding of contempt on a factual issue that was not at issue before the court, and thus an issue that HUD had no opportunity to litigate. Moreover, HUD alleges the court abused its discretion by denying HUD's post-trial Rule 59 motion in which HUD attempted to present evidence of its actual practice in 1979. Because we hold that the court below abused its discretion in basing its finding upon a factual

issue not at issue, and thus one that HUD had no opportunity to contest, we need not decide whether the district court's finding was clearly erroneous.

The plaintiffs claim that their petition for contempt put HUD on notice that the issue of HUD's practice prior to the 1979 amended decree was at issue. Plaintiffs point to sections of their petition which discuss HUD's use of the two-month rule and an attached letter, a memorandum of the HUD Tampa Office Supervisor, which according to plaintiffs "indicated that the field office practice prior to being ordered to use the two-month rule was to use the 'current default' on all assignment requests."

Plaintiffs point out that HUD did not deny the factual allegations in the petition, but rather agreed to try the contempt matter on the basis of the "papers already filed." Plaintiffs further point out that at no time prior to the court's March 22, 1985 ruling did HUD indicate surprise or lack of preparedness to litigate the entire matter. Finally, plaintiffs argue that all the Rule 59 evidence filed by HUD was available to HUD at the time of the prior hearing. Thus, plaintiffs argue that the district court acted within its discretion in finding that HUD changed its policy, and then denying HUD's Rule 59 motion.

 Upon close examination, however, plaintiffs' argument that HUD was on notice that its prior policy was at issue cannot prevail. A careful reading of the plaintiffs' petition reveals that HUD reasonably thought it was litigating only one issue— whether its use of the two-month rule violated an unambiguous command from the court. Nowhere in the section of the petition which plaintiffs relied upon at oral argument to demonstrate HUD had notice of the issue do the plaintiffs mention paragraph 3 of the 1979 amended decree, the section which requires HUD to notify plaintiffs' counsel before modifying the assignment program.[12] This failure to mention

---

**12.** The plaintiffs point to ¶ 14(b) of their petition, which contains the phrase "'change of

procedure' from correct practice." Read in context, however, it is clear that the only issue the

paragraph 3 is emphasized by the fact that later in the petition plaintiffs do list several alleged HUD policy changes about which HUD allegedly failed to notify plaintiffs' counsel. The two-month rule is noticeably not among the listed changes.

▬ Were this a normal trial between two adversarial parties, we would possibly treat the plaintiffs' new change-in-policy argument as waived. We recognize, however, that a trial court has a great deal more latitude in enforcing its own decrees in a contempt proceeding. *See Thompson v. Cleland*, 782 F.2d 719, 721 (7th Cir.1986) (judicial sanctions in civil contempt appropriate to (1) coerce defendant into compliance with court's order and (2) to compensate plaintiff for loss). Nevertheless, it is still an abuse of discretion for the trial court to find a party in contempt without giving the party an opportunity to contest the issue. In this case, HUD had no reason to litigate its pre-1980 policy; HUD justifiably litigated solely the issues raised in the plaintiffs' petition for contempt.

▬ When HUD discovered that the district court had based its contempt citation in part on its finding that HUD had changed its policy, HUD filed, under Fed.R. Civ.P. 59, a motion for a new trial, to vacate judgment, and enter new judgment. HUD sought a new trial to correct alleged "manifest errors of law or fact," primarily flowing from the court's finding about HUD's change in policy. HUD offered 12 new affidavits and over 150 pages of additional documentation because "the issue to

which the previously available evidence would be responsive had not been clearly and timely framed in the proceedings before the court," and thus HUD had been unfairly surprised by "the new approach and focus" taken by the court.

Plaintiffs argued that HUD was merely attempting to relitigate the issue. The district court agreed. Both the district court and the plaintiffs point out that HUD had all the "new" evidence previously available. HUD concedes that it had the evidence available, but argues that prior to the district court's opinion it had no reason to present the evidence. As we said above, HUD had no reason to present the evidence in the earlier hearing because HUD's pre-1980 policy was not at issue. The denial of HUD's Rule 59 motion further prevented HUD from receiving the fair hearing to which it was entitled before being held in contempt. The district court abused its discretion in holding HUD in contempt because the 1979 amended decree contained no unambiguous command which HUD violated and HUD did not have an opportunity to litigate the change-in-policy charge. Therefore, we must vacate the district court's contempt citation.[13]

### III. REMAND

As we held above, HUD's use of the two-month rule did not, in and of itself, violate any unequivocal command contained in the 1979 amended decree. HUD may, however, have violated an unequivocal command, contained in paragraphs 3 and 14 of the decree, that HUD neither change its

---

plaintiffs were raising was whether HUD was using "correct practice." Moreover, the "change" referred to concerned only one HUD field office, not HUD's nationwide practice. Throughout this entire section of the plaintiffs' petition for contempt, the plaintiffs argue that HUD's use of the two-month rule, not HUD's alleged change of policy, violated the amended decree.

13. During the hearing below, HUD attempted to present evidence that counsel for the plaintiffs agreed to the two-month rule prior to the 1979 amended decree. HUD submitted an affidavit from Philip Forest and sought to depose the plaintiffs' attorneys. The district court granted plaintiffs' motion to prevent the depositions and

ordered Forest's declaration stricken. The district court based its ruling primarily upon its finding that the 1979 amended decree was unambiguous, and thus extrinsic evidence of its meaning was unnecessary and inadmissible. Because this ruling was based upon a faulty premise, *i.e.*, that the consent decree was unambiguous, HUD will have another opportunity to present evidence that the plaintiffs' counsel agreed to include the two-month rule in the Handbook. If HUD can establish this point, it will demonstrate that the two-month rule was authorized under the amended decree and that HUD did not change its policy to circumvent the decree.

policy without notifying plaintiffs' counsel nor fail to provide relief pursuant to the program outlined in the amended decree, if HUD in fact switched its nationwide practice from the advancement rule to the two-month rule following the 1979 amended decree. We remand this case so that plaintiffs, if they choose, may pursue this theory. On remand both parties will have an opportunity to fully litigate the issue of HUD's pre-1980 policy. If plaintiffs can demonstrate by clear and convincing evidence that HUD's consistent nationwide practice prior to 1980 was to use the advancement rule, then HUD was in contempt. HUD will have a chance to establish that the two-month rule was merely a continuation of prior practice or a clarification necessitated by inconsistency among different regional offices. In order to promote an efficient conclusion to this matter, we will address briefly several issues which arose below and probably will surface again on remand.

### A. Collateral Estoppel and Law of the Case

Although we mentioned this issue briefly above, *see supra* § IIA, we now turn again to the issue of what effect the district court's 1983–84 interpretations of the 1979 amended decree have on this case. As noted above, those court decisions had no effect upon the issue of whether HUD violated an unambiguous command contained in the decree.[14] Plaintiffs would maintain, however, that to the extent the correct (as opposed to unambiguous) meaning of the consent decree is at issue,[15] the district court's 1983–84 decisions which required HUD to use the advancement rule in all pending and future cases[16] bar HUD from litigating whether the advancement rule should be applied retroactively.[17] We reject that argument.

The district court, on at least three occasions prior to its contempt citation, interpreted the consent decree to require the advancement rule. *Ferrell v. Pierce,* 560 F.Supp. 1344, 1366–68 (N.D.Ill.1983); Memorandum Opinion of July 11, 1983; Memorandum Opinion of April 5, 1984. HUD did not appeal the date of default issue in any of these cases. On the basis of these prior cases, the district court ruled that the doctrines of collateral estoppel and law of the case bar HUD from relitigating the issue. We believe that neither the collateral estoppel doctrine nor the law of the case doctrine is applicable to this case.

 Collateral estoppel, which is also known as issue preclusion, generally prevents a party from relitigating an issue the party has already litigated and lost. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same

---

**14.** Because it is unclear from the district court's memorandum concerning the contempt order whether the district court used the correct standard (*i.e.,* whether HUD violated an unambiguous command), we have analyzed the court's decision as if it had used the proper standard. If the district court did in fact base its contempt citation upon an erroneous legal standard, that would in and of itself justify our decision to vacate the order. It is unnecessary to the result in this case, however, for us to determine which standard the court used.

**15.** Plaintiffs concede that "if the two-month rule did not violate the 1979 decree, there would have been no basis for finding [HUD] in contempt, or for otherwise awarding plaintiffs relief to compensate them for HUD's failure to do so [sic] between 1980–1983."

**16.** Plaintiffs argue that the district court's April 5, 1983 opinion already ordered HUD to apply the rule "retroactively" to cases already in progress. While that is true in a highly technical semantic sense, there is obviously a great difference between ordering HUD to apply the decision to pending cases and ordering HUD to go back and reprocess closed files. Therefore, it is reasonable for HUD to characterize the district court's 1983–84 decisions as ordering only prospective relief.

**17.** Plaintiffs cannot use the *Etheridge* decision to collaterally estop HUD from relitigating the proper rule under the 1979 consent decree. *See United States v. Mendoza,* 464 U.S. 154, 159–64, 104 S.Ct. 568, 572–74, 78 L.Ed.2d 379 (1984) (nonparties to a case may not invoke a decision as offensive collateral estoppel against the government in subsequent litigation).

or a different claim." Restatement (Second) of Judgments § 27 (1982). An essential question whenever collateral estoppel is raised is "whether the issue was actually recognized by the parties as important and by the trier as necessary to the first judgment. If so, the determination is conclusive between the parties in a subsequent action, unless there is a basis for an exception," such as a case where "the significance of the issue for purposes of the subsequent action was not sufficiently foreseeable at the time of the first action." Restatement (Second) of Judgments § 27 comment j.

In this case, it is clear that in the prior decisions the issue of which date of default rule HUD should use arose only in the context of HUD's present and future implementation of the mortgage assistance program. Thus, the factual and legal context of this case, with the plaintiffs requesting HUD to go back and reopen past applications, is considerably different than in the prior cases. One need only read the district court's extensive relief order to comprehend how much greater is the significance of the date of default rule in the present case. In the prior cases, HUD had significantly less incentive to appeal the district court's adverse determinations.[18] *See* Restatement (Second) of Judgment § 28(5)(c) (an exception to general rule of issue preclusion where "the party sought to be precluded, as a result of ... special circumstances, did not have an adequate ... incentive to obtain a full and fair adjudication in the initial action"). Therefore, it would be inequitable to bar HUD from litigating the date of default rule for the time period prior to the district court's 1983–84 decisions.

Our decision is buttressed by an important consideration regarding judicial administration. It has become increasingly common for a state or federal government program to be run under a judicially approved consent decree. Often, disputes arise as to the proper meaning of such a decree and the district court must enter an order interpreting the decree. In cases such as this one, the government may disagree with a court's interpretation of a decree yet believe that the ruling is too insignificant to warrant appeal. If we were to hold that the government is then foreclosed from challenging the judicial interpretation in a later case when plaintiffs go back to the court asking for a contempt citation or retroactive relief, the government would be forced to appeal every adverse ruling, even the ones it can live with, merely to protect itself. We decline to encourage such unnecessary litigation.

Similar considerations persuade us that the law of the case doctrine would be inappropriate in this case. "When a court states a rule of law which is to be applied in the case before it, the court establishes the 'law of the case' that will normally be applied to the same issues in subsequent proceedings in that case." *James Burrough Ltd. v. Sign of Beefeater*, 572 F.2d 574, 577 (7th Cir.1978). Once again, it would be inequitable to bind HUD based upon its failure to appeal the earlier decisions which ordered only prospective relief and placed significantly lesser time and cost burdens on HUD. Furthermore, the potential problems with the future administration of judicial decrees that would be created counsel us that it would be an abuse of discretion to apply the discretionary doctrine of law of the case here. *See Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983) (law of the case doctrine is directed to a

---

**18.** Plaintiffs claim that because they had threatened in a letter dated June 3, 1983, to file a contempt citation if HUD did not voluntarily reprocess all rejected applications, HUD knew that contempt and retroactive relief were possible. The plaintiffs' letter does not change the fact, however, that the prior cases involved only prospective relief. In any case involving the implementation of a consent decree, the threat of contempt is a negotiating technique for the plaintiffs' class. We do not believe, however, that the mere threat of future contempt proceedings is sufficient to force the government to appeal every adverse judicial construction of a consent decree, at the risk of being barred in a subsequent contempt or retroactive relief case.

court's discretion and is not a limit on the court's power).

### B. Equitable Relief

 Plaintiffs allege on appeal that the district court's rulings below are independently supportable either on the basis of the contempt finding *or* as an exercise of the district court's equitable discretion. In particular, plaintiffs argue that *Chevron Oil v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), requires retroactive application of the district court's decisions. In *Chevron*, the Supreme Court held that retroactive application of the court's decision is required unless (1) the decision "establish[ed] a new principle of law, either by overruling clear past precedent on which the litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed," (2) retrospective application will retard the operation of the principles being applied, or (3) the equities dictate prospective application only. *Chevron*, 404 U.S. at 106–107, 92 S.Ct. at 355.

HUD asserts that under the *Chevron* test it should not be required to reprocess retroactively because the district court "decid[ed] an issue of first impression whose resolution was not clearly foreshadowed." [19] *See* 404 U.S. at 107, 92 S.Ct. at 355. As we pointed out above, the 1979 amended decree was ambiguous as to the proper method for calculating the date of default. Although the plaintiffs claim that the *Etheridge* decision foreshadowed the district court's ruling, HUD has demonstrated that the *Etheridge* decision is arguably inconsistent with the district court's

advancement rule. Therefore, *Chevron* does not permit retroactive application.[20] In order to obtain retroactive relief, plaintiffs must prove by clear and convincing evidence that HUD was in contempt—the equitable ground will not support retroactive relief.

### C. Remedy

The district court ordered HUD to perform various remedial acts to purge itself of contempt. In addition to *de novo* reprocessing, the court ordered HUD to undertake extensive efforts to notify persons potentially eligible for relief, to arrange reconveyance or substitute conveyance of houses, and to pay compensatory damages. The court issued a rule to show cause why respondents Forest, Buchheit, and McCormick should not be held in contempt in their individual capacities. The court also greatly enlarged HUD's responsibility to notify plaintiffs' counsel of any changes, modifications, clarifications and so forth in the program.

Because we vacate the order of contempt, we necessarily vacate all the relief ordered by the district court. Because it may not be necessary on remand to decide the issues related to relief, we express no opinion as to those issues at this time. We recognize that the district court's order, particularly the court's decision to award monetary damages against the government, raises some difficult legal questions which the parties briefed but were unable to address at oral argument. Because these difficult issues are at present wholly speculative, we decline to consider them at this time.

---

19. HUD also argues that the equitable doctrine of laches constituted a bar to recovery because the plaintiffs' "prolonged and inexcusable" delay in bringing this suit "operat[ed] to [HUD's] material prejudice." *Advance Hydraulics v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975). HUD points out that plaintiffs have known HUD was using the two-month rule at least since the 1981 *Etheridge* case. The district court rejected this defense, and we need not consider it here because *Chevron* does not allow retroactive application.

20. We read the district court's decision that the advancement rule was "clearly foreshadowed" to rely primarily upon its determination that HUD used the advancement rule prior to the 1979 amended decree. As we noted above, that ground cannot support the decision because HUD was afforded no opportunity to litigate the issue. If HUD did change its rule in violation of the amended decree, HUD is in contempt and a ruling on equitable relief will be unnecessary. We therefore leave open the question of whether a change in policy would ever be sufficient to satisfy the *Chevron* test.

## IV. CONCLUSION

The district court held HUD in contempt of court for violating the 1979 amended decree which delineated HUD's responsibility in implementing a mortgage foreclosure relief program affecting the plaintiff class. Because the 1979 amended decree was at best ambiguous about the critical issue, *i.e.*, the proper method for calculating the date of default, HUD did not violate an "unequivocal command" contained in the decree. HUD may, however, have violated the decree by changing its nationwide policy following the 1979 amended decree, but HUD had no opportunity to litigate this issue in the court below. We therefore must remand this case to allow HUD to respond to this theory which was not an issue in the earlier proceeding. Finally, applying the test prescribed by the Supreme Court in *Chevron*, it would be an abuse of discretion for the district court to order retroactive reprocessing absent a finding of contempt. Circuit Rule 18 shall apply on remand. The contempt citation is VACATED, and this case is REMANDED.